**[J-22-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 13 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered July 22, 2016 at No. |
| | : | 260 WDA 2015, reversing the Order |
| v. | : | of the Court of Common Pleas of |
| | : | Washington County entered January |
| | : | 20, 2015 at Nos. CP-63-CR- |
| DAREL BARBOUR, | : | 00001701-2003 & CP-63-CR- |
| | : | 00002018-2003. |
| Appellant | : | |
| | : | ARGUED: April 10, 2018 |

## OPINION

**JUSTICE WECHT**                                    **DECIDED: JULY 18, 2018**

In *Commonwealth v. Steltz*, 560 A.2d 1390 (Pa. 1989), this Court held that a criminal defendant's failure to appear at a trial scheduled within the time period provided by the speedy trial guarantee of the Pennsylvania Rules of Criminal Procedure[1]

---

[1]       *See* Pa.R.Crim.P. 600. Rule 600 formerly was numbered as Rule 1100, including during the years in which this Court decided *Steltz* and several other cases discussed herein. Rule 1100 was amended and renumbered as Rule 600 on April 1, 2001. However, because much of the rule's substance remained consistent throughout the amendment, this Court has continued to apply our precedents interpreting former Rule 1100 to the analogous provisions of Rule 600, sometimes employing Rule 600 nomenclature to facilitate discussion of Rule 1100 precedents. *See, e.g., Commonwealth v. Sloan*, 907 A.2d 460, 463 n.5 (Pa. 2006) (explaining that, because "the substance of the sections of current Rule 600 and former Rule 1100 under scrutiny are identical," the Court would "for the sake of convenience and clarity . . . substitute the applicable numbering nomenclature of Rule 600 for that of old Rule 1100"). Except where necessary to avoid confusion, we continue this practice herein, and will refer to the rule-based right, generally, as "Rule 600."

constitutes a waiver of that defendant's right to seek a remedy under that rule. Today, we consider whether the *Steltz* waiver rule applies to a defendant who absented himself from an untimely trial—one that violated Rule 600 before the defendant failed to appear. The Superior Court determined that the *Steltz* rule applies without regard to the timeliness of the trial, and accordingly reversed the order of the Washington County Court of Common Pleas granting Darel Barbour relief under Rule 600. We conclude that the *Steltz* rule is inapplicable. Consequently, we reverse the order of the Superior Court.

By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." *Id.* 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." *Id.* When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant. Absent a demonstration of due diligence, establishing that the Commonwealth has done "everything reasonable within its power to guarantee that [the] trial begins on time," *Commonwealth v. Matis*, 710 A.2d 12, 17 (Pa. 1998), the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

The particulars of the Rule 600 computation in the instant case are not in dispute. Nonetheless, some factual background is required in order to provide context to the

dispositive inquiry. Darel Barbour originally was scheduled for a trial on October 18, 2004, on two consolidated criminal cases, which were commenced by criminal complaints filed on August 4, 2003 and August 20, 2003, respectively. Barbour did not appear for his trial, and, due to his absence, the trial court issued bench warrants for his arrest. Those warrants remained outstanding for nearly a decade, until Barbour was arrested for an unrelated criminal offense on September 8, 2014. Following that arrest, Barbour's older cases were scheduled for trial on October 20, 2014. However, on October 3, 2014, Barbour moved to dismiss both cases under Rule 600, contending that his original trial date of October 18, 2004—the date upon which he failed to appear—was scheduled in violation of the rule.

The trial court held a hearing on Barbour's motion on December 29, 2014. In support of its position that Barbour's October 18, 2004, trial date complied with Rule 600, the Commonwealth presented the testimony of Assistant District Attorney Josh Carroll, who was the prosecutor assigned to Barbour's cases. ADA Carroll explained that, in 2004, trial scheduling in Washington County was largely an informal process. Oftentimes, ADA Carroll testified, defendants were provided no written notice of when their appearance was required, and no formal court orders were prepared or placed on the docket. Instead, defendants generally were given oral notice of court proceedings, and, "[a]t that point, there would not have been any notices sent out or any [o]rders. It was much more informal, just . . . here is the date, show up." Notes of Testimony, Rule 600 Hearing ("N.T."), 12/29/2014, at 15.

Due to the informality of this process and the lack of detailed recordkeeping, evidence of the procedural history of Barbour's cases was sparse. The official docket reflected the dates of Barbour's preliminary hearings and arraignments, but offered little insight into the purpose and outcome of several later proceedings. It was clear that,

following a hearing on March 5, 2004, Barbour was granted a nominal bail and released from pre-trial incarceration. Several months later, on September 14, 2004, the court issued a bench warrant due to Barbour's failure to appear for an unspecified proceeding. However, because Barbour was not given sufficient notice that his appearance was required, the court vacated that warrant three days later. The order vacating the bench warrant stated that Barbour and his counsel were expected to be prepared to proceed to trial during the October 2004 trial term. This was the first clear reference to a trial date in the record.

The period of time following Barbour's nominal bail hearing was a subject of contention at the December 2014 hearing. ADA Carroll testified that, following Barbour's release on bail in March 2004, he "would have" scheduled the cases for the next available trial term, in April 2004. N.T., 12/29/2014, at 20. However, the official docket contained no reference to any criminal proceeding scheduled during the month of April. The court questioned ADA Carroll about the sequence of events in April:

> THE COURT: Can I interrupt for a second, before we get too far off here? You said it was initially called for trial in April; correct?
>
> [ADA Carroll]: Yes.
>
> THE COURT: Why didn't you request a bench warrant when he didn't show up in April?
>
> [ADA Carroll]: I don't know that he didn't show up in April.
>
> THE COURT: You don't know what happened then?
>
> [ADA Carroll]: What would have happened, Your Honor, would have been, as indicated, we were set up to put this one on the trial list. In some cases, it was a notebook, like you have in front of you, that had cases written down on it that were just called for trial. There was no formal [o]rder.
>
> What would have transpired between April and September may have been — there may have been other trials or things that took precedence.

As I indicated, I know the senior judges were only, I think, only allowed, actually, by law to be here five or seven days a month. I think it was five. So, there was a very small window.

THE COURT: So, you don't really know what happened between April and September?

[ADA Carroll]: No. I don't recall.

N.T., 12/29/2014, at 23-24. ADA Carroll also suggested that Barbour's trial was scheduled for September 2004, but conceded that "there is nothing in the docket" to corroborate his assertion. *Id.* at 22.

The trial court ultimately granted Barbour's Rule 600 motion and dismissed both cases with prejudice. After accounting for the periods of delay excluded from the computation, the court determined that the Rule 600 run dates for Barbour's cases were August 18, 2004, and September 1, 2004, respectively. Barbour's trial date of October 18, 2004, indisputably lay beyond either of those dates. Although ADA Carroll asserted that he scheduled Barbour's trial sometime before October 18, 2004, the trial court rejected this testimony, finding that "[t]here is absolutely nothing in the official docket that would indicate a trial for either case was ever scheduled before that date." Trial Ct. Op., 4/2/2015, at 18. The court gave little weight to ADA Carroll's suggestions that he "would have" scheduled Barbour's trial at some earlier date, explaining that, "[s]imply put, this [c]ourt is not concerned with what 'would' have happened, or 'may' have happened; the [c]ourt is only concerned with what did happen." *Id.* (emphasis omitted).

The court further concluded that the Commonwealth offered no justifiable excuse for its failure to schedule Barbour's trial in a timely manner, and, thus, failed to establish that it acted with due diligence in attempting to bring Barbour to trial. There was no evidence of administrative error or any other delay that was occasioned by some circumstance beyond the Commonwealth's control. "In this matter," the court reasoned,

"it is clear beyond a preponderance of the evidence that the Commonwealth's outstanding negligence in failing to account for the time that had passed since the filing of the criminal complaints is the sole impetus behind the Rule 600 violations." *Id.* at 20.

Finally, the trial court considered the Commonwealth's argument that to grant Barbour relief under Rule 600 would be contrary to the "spirit of the law" and would encourage "procedural gamesmanship" by unduly rewarding Barbour's failure to appear. *Id.* at 22-23. The court disagreed, reasoning that Barbour's failure to appear at trial was not the cause of the Rule 600 violations. The court explained that, "[b]ecause the Rule 600 violations . . . occurred before [Barbour] had absconded, the Commonwealth's argument regarding 'procedural gamesmanship' is totally misplaced." *Id.* at 22. In the trial court's view, Barbour was deprived of a speedy trial not because of the nearly ten years' delay caused by his absence, but rather due to the Commonwealth's earlier failure to put forth a reasonable effort to bring the cases to trial within the limits of Rule 600. The court concluded that, in light of the important rights at stake, and considering "the inexcusable failure of the Commonwealth to keep track of the time that had elapsed in these matters," the court could not "ignore the fact that the Commonwealth waited over a year, without any reasonable justification, to bring either of these cases to trial." *Id.* at 23.

The Commonwealth appealed to the Superior Court, which reversed the trial court's order and remanded Barbour's cases for trial, albeit without a majority rationale for doing so. *See Commonwealth v. Barbour*, 260 WDA 2015, 2016 WL 4920328 (Pa. Super. July 22, 2016) (unpublished).[2] The Superior Court's lead memorandum did not revisit the trial court's Rule 600 computation, nor did it dispute the court's conclusion that

---

[2] The Superior Court announced its disposition in a memorandum authored by then-Judge, now-Justice, Mundy. Judge Bowes authored a concurring memorandum, in which she relied upon a distinct theory supporting the same outcome. Judge Jenkins concurred in the result, but did not join either of her colleagues' memoranda. For ease of discussion, we will refer to then-Judge Mundy's writing as the "lead memorandum."

Barbour's October 18, 2004 trial date was untimely. Instead, the lead memorandum concluded that, pursuant to this Court's holding in *Steltz*, Barbour waived the protections of Rule 600 by failing to appear on his original trial date. In *Steltz*, this Court held that "[o]ne's voluntary absence from a day set for trial within Rule [600] is a waiver of that rule," and that, once an absconding defendant is taken back into custody, the trial shall take place "at the reasonable convenience of the court and the prosecuting authorities." *Steltz*, 560 A.2d at 1391. The Superior Court's lead memorandum noted that this Court again had relied upon the *Steltz* waiver rule in *Commonwealth v. Brock*, 61 A.3d 1015 (Pa. 2013).

The lead memorandum acknowledged that "in *Steltz* and *Brock* the defendants absconded before the Commonwealth's Rule 600 time had expired." *Barbour*, slip op. at 10. The lead memorandum recognized that Barbour's circumstance was distinguishable, in that the trial court concluded that the Commonwealth violated Rule 600 before he failed to appear for trial. Nevertheless, the lead memorandum reasoned that a court could not condone Barbour's absconsion by "permitting a defendant to file a motion to dismiss under Rule 600 after returning from ten years as a fugitive." *Id.* at 9. Noting that it was uncontested that Barbour's cases were called for trial on October 18, 2004, and that Barbour did not appear, the lead memorandum concluded that, pursuant to *Steltz*, Barbour "waived his Rule 600 rights and could not file a Rule 600 motion upon his return to the trial court ten years later." *Id.* at 10. Accordingly, the lead memorandum held that the trial court abused its discretion in granting Barbour's motion, reversed the trial court's order, and remanded Barbour's cases for trial.

Judge Bowes concurred, but did not join the lead memorandum because, in her view, it misapplied the holding of *Steltz*. Judge Bowes noted that the Commonwealth presented no grounds to disturb the trial court's factual findings and Rule 600

computation, and that the Superior Court accordingly was bound by the trial court's determination that Barbour's original trial date of October 18, 2004, was scheduled in violation of Rule 600. Stressing that, in *Steltz*, this Court concluded that waiver was appropriate because the defendant failed to appear on a day set for trial *within* Rule 600, Judge Bowes observed that, in other words, "[i]n both *Steltz* and *Brock*, the defendants failed to appear for a trial date that **complied** with Rule 600." Concurring Memorandum, slip op. at 1-2 (emphasis in original). By contrast, in the instant case:

> [Barbour's] absence was **not** "for a day set for trial within Rule [600]." In essence, the trial court determined that dismissal of charges was a *fait accompli*: had [Barbour] appeared in court on October 18, 2004, as scheduled, a motion for dismissal would have succeeded. Waiver of the rule-based right to a speedy trial is justified when a defendant fails to appear for a date within Rule 600 for a simple reason: he could have had a timely trial by appearing. By failing to appear, "they go to the end of the line and must wait their turn after the convenience of the others their absence delayed." *Steltz*, 560 A.2d at 1391. Here, the trial court has determined [Barbour] was denied the right to timely trial, even if he had appeared in October of 2004. All that remained for him to do was request dismissal.

*Id.* at 2-3 (emphasis in original; some alterations in original; citation modified).

Judge Bowes illustrated the potential pitfalls of the lead memorandum's application of *Steltz* with a hypothetical:

> Imagine the Commonwealth schedules a case well beyond the mechanical run date. The defendant fails to appear and a bench warrant is issued. The next day, the litigant appears and the case is scheduled for the next available court date. According to the [lead memorandum], this defendant has forever lost the ability to raise a Rule 600 claim, and the Commonwealth would not need to establish due diligence.

*Id.* at 3 (emphasis omitted).

Rather than applying *Steltz*, Judge Bowes would have denied Barbour relief upon a distinct, novel theory. Judge Bowes concluded that the ten years that elapsed between Barbour's failure to appear and his filing of the Rule 600 motion prejudiced the

Commonwealth's ability to respond to the motion, in that "the Commonwealth was unfairly hampered in its ability to convince the trial court that [Barbour] was, in fact, scheduled for trial well before" October 18, 2004. *Id.* at 4. Judge Bowes stressed that all rights, even those of constitutional dimension, may be forfeited by a litigant's failure to assert the right in a timely manner. *See id.* at 9 (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right.") (internal quotation marks omitted)). Judge Bowes recognized that Rule 600 places a burden upon the Commonwealth, not the defendant, and that a criminal defendant has no obligation to bring himself to trial. *See id.* at 11 (citing *Commonwealth v. Brown*, 875 A.2d 1128, 1141 (Pa. Super. 2005) ("Appellee had no obligation to bring himself to trial")). Nonetheless, Judge Bowes reasoned that "there is a difference between a demand for trial and a demand for discharge." *Id.* (emphasis omitted). When Rule 600 has been violated, Judge Bowes suggested, the defendant "should bear some duty to assert the allegation of error in a timely manner." *Id.*

In the instant case, Judge Bowes observed "strong indications the Commonwealth was prejudiced by the delay." *Id.* at 12. Although the official record provided scant details of the proceedings leading up to Barbour's October 18, 2004 trial date, the evidence suggested that some type of proceeding was scheduled before that date. After ten years, Judge Bowes opined, the parties were unable to recall effectively the sequence of events in 2004. Judge Bowes concluded that "the Commonwealth was prejudiced by the loss of evidence and faded memories due to [Barbour's] lack of diligence in pursuing discharge." *Id.* at 13. Accordingly, she would have concluded that Barbour forfeited his right to the Rule 600 remedy.

Judge Bowes recognized that the text of Rule 600 does not impose her suggested time limitation upon the filing of the motion, and further acknowledged that the Superior Court is not authorized to promulgate rules of procedure, which is the exclusive province of this Court under Article V, Section 10(c) of the Pennsylvania Constitution. Nonetheless, Judge Bowes invoked a passage from former Chief Justice Castille's concurring opinion in *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), wherein he stated that, although the Superior Court is not authorized to adopt or amend our procedural rules, he had "no fixed objection to the [Superior Court] undertaking to adopt efficiencies and improvements in order to better serve justice." *Id.* at 881 (Castille, C.J., concurring). Judge Bowes suggested that her proposed disposition was consistent with that position.

We granted Barbour's petition for allowance of appeal in order to consider the applicability of the *Steltz* waiver rule in light of the untimeliness of Barbour's original trial date. We also directed the parties to address the viability of Judge Bowes' novel Rule 600 forfeiture theory.[3]

Before this Court, Barbour argues that the Superior Court's lead memorandum is inconsistent with both the plain language of Rule 600 and this Court's decisions in *Steltz* and *Brock*. Barbour notes that the Rules of Criminal Procedure are to "be construed in consonance with the rules of statutory construction," and that, under the Statutory

---

[3]     Adopting Barbour's statement of the issue, but directing additional briefing, we granted *allocatur* in order to consider these questions:

> Did the Superior Court err in creating a new waiver [ ] provision for [Pa.R.Crim.P.] 600 by holding that a defendant who fails to appear for an untimely trial can still waive his rights under the rule, in direct contradiction to this Court's jurisprudence?

> Additionally, the parties are directed to address the viability and applicability of the waiver theory articulated in Judge Bowes' concurring memorandum, particularly in light of the text of Rule 600.

*Commonwealth v. Barbour*, 168 A.3d 1241 (Pa. 2017) (*per curiam*).

Construction Act, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Brief for Barbour at 19 (quoting Pa.R.Crim.P. 101(C); 1 Pa.C.S. § 1921). Barbour observes that no provision of Rule 600 mandates a finding of waiver. *See id.* at 19-23. Accordingly, Barbour argues that the Superior Court's decision is contrary to the unambiguous language of the rule.

With regard to the applicability of this Court's decisions in *Steltz* and *Brock*, Barbour essentially adopts Judge Bowes' position on this particular point, distinguishing his failure to appear for an *untimely* trial from a defendant's failure to appear for a timely trial. In *Steltz*, Barbour argues, it was the defendant's failure to appear "which caused the trial to be rescheduled for a date outside of the Rule 600 requirements." *Id.* at 23. Here, unlike in *Steltz*, Barbour argues that he "did not fail to appear for a properly scheduled trial." *Id.* at 25. As for *Brock*, Barbour notes that this Court's opinion did not specify whether the defendant's original trial date complied with Rule 600. However, Barbour observes that the focus of *Brock* was not upon the timeliness of the trial, but upon the inquiry of "exactly when a case is 'set for trial'" for purposes of Rule 600. *Id.* at 24. Barbour contends that the *Steltz* waiver rule is narrow in application, and permits a finding of waiver only when a defendant causes a delay by failing to appear for an otherwise-timely trial. Barbour argues that, in finding that his absence from an untimely trial results in permanent waiver, and thereby excusing the Commonwealth entirely from its Rule 600 obligations, the Superior Court erroneously and unjustifiably expanded the *Steltz* rule beyond its intended scope.

In challenging Judge Bowes' alternative approach, Barbour argues that Rule 600 already provides an unambiguous limitation upon the filing of a Rule 600 motion. Barbour highlights the subsection of Rule 600 that specifies that a written motion may be filed "at

any time before trial." *Id.* at 27 (quoting Pa.R.Crim.P. 600(D)(1)). Thus, Barbour contends, Judge Bowes' suggestion—that a defendant must advance a Rule 600 claim in an unspecified "timely fashion" or lose the right to relief—contradicts the plain language of the rule. Rather, Barbour argues, "a defendant can move to dismiss a case for a Rule 600 violation any time before trial, with no other time limitations imposed." *Id.* at 28. Barbour further contends that Judge Bowes' approach would impose a burden upon a defendant that is inconsistent with the purpose of Rule 600. Barbour notes that it is the Commonwealth's duty to prosecute defendants in a timely manner, and that defendants are neither required nor expected to take any steps to prosecute themselves. Barbour argues that, "[i]f the Commonwealth forgets about a case and does not pursue it, then the Commonwealth has failed society," adding that defendants "should not be punished for the Commonwealth's failure." *Id.* at 29.

For its part, the Commonwealth contends that the *Steltz* waiver rule was premised not upon the timeliness of a trial, but upon the "ripple-effect a defendant's non-appearance has on the system." Brief for Commonwealth at 18. In the Commonwealth's view, the *Steltz* Court primarily was concerned with the delay that an absence from trial causes for other individuals, in that a defendant who fails to appear wastes judicial and prosecutorial time and resources that could have been devoted to other individuals awaiting trial. For this reason, the Commonwealth contends, the *Steltz* waiver rule should apply uniformly to all absentees, without regard to the timeliness of the trial under Rule 600. In further support, the Commonwealth notes that, in *Brock*, this Court applied the *Steltz* waiver rule but "did not emphasize where that trial date fell with regard to Rule 600." *Id.* at 19.

The Commonwealth further maintains that, should we afford Barbour the remedy provided by Rule 600, we would encourage "procedural gamesmanship." *Id.* at 19-20.

According to the Commonwealth, Barbour "comes to the court with unclean hands wanting to profit by his wrongful behavior by manipulating a rule designed to protect the defendant by bringing his case to trial." *Id.* at 21. To discourage such purported chicanery, the Commonwealth suggests that this Court apply "the logical, common sense rule that the voluntary absence of a criminal defendant from the date of trial, wherever it falls relative to the Rule 600 deadline, is a waiver of that rule." *Id.* at 22-23. As a final argument supporting the uniform, automatic application of the *Steltz* waiver rule, the Commonwealth notes that a finding of waiver generally relieves a court from consideration of the merits of a claim. Because a court, in order to discern a Rule 600 violation, ordinarily must hold a hearing, take evidence, and make findings relating to the exclusion of certain time periods from the Rule 600 computation, the Commonwealth argues that it would be incongruous to premise a finding of waiver upon the point in time at which Rule 600 is violated, inasmuch as the merits of the claim must be addressed before a violation may be found. *See id.* at 24-27. Ruling in Barbour's favor, the Commonwealth warns, would "open Pandora's Box to litigation in Pennsylvania's trial courts and appellate courts as to whether Rule 600 even applies to an absconding defendant." *Id.* at 26-27.

Setting aside the *Steltz* waiver rule, the Commonwealth suggests that Judge Bowes provided a reasonable alternative theory, which is acceptable in that it similarly "does not reward a criminal defendant for intentionally absconding from trial." *Id.* at 28. In the Commonwealth's view, forfeiture of Barbour's Rule 600 claim was warranted by the combination of Barbour's delay in asserting his right and the prejudice that the Commonwealth sustained to its ability to defend against his motion. The Commonwealth likens Judge Bowes' forfeiture approach to the federal courts' application of the fugitive disentitlement doctrine, pursuant to which a court may, in the Commonwealth's words,

"preclude fugitives from seeking relief from the judicial system whose authority he or she evades." *Id.* at 33; *see generally Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993). The Commonwealth acknowledges that Judge Bowes' theory appears to be inconsistent with the language of Subsection (D)(1) of the rule, which, as Barbour stresses, provides that a Rule 600 motion may be brought "at any time before trial." *See* Brief for Commonwealth at 35-36; Pa.R.Crim.P. 600(D)(1). Nevertheless, the Commonwealth suggests, adoption of Judge Bowes' forfeiture principle would be a permissible exercise of this Court's rulemaking authority. However, the Commonwealth concludes by suggesting its preference for an extension of the waiver rule of *Steltz* and *Brock*, decisions which, the Commonwealth emphasizes, "remain good law in Pennsylvania." Brief for Commonwealth at 36.

"Ordinarily, prompt-trial rulings are reviewed by the appellate courts for an abuse of discretion." *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (citing *Commonwealth v. Burno*, 154 A.3d 764, 793 (Pa. 2017)). However, the applicability of waiver principles to preclude the Rule 600 remedy is a question of law, over which our standard of review is *de novo* and our scope of review is plenary. *Id.* (citing *In re D.L.H.*, 2 A.3d 505, 513 (Pa. 2010) (a question of law is "subject to plenary review by this Court to be conducted *de novo*")).

Although it is a rule-based right that is at issue in this matter, rather than the distinct constitutional right to a speedy trial, we remain conscious of the essential purpose of Rule 600 and the important constitutional interest that it safeguards—an interest which underlies all of our Rule 600 jurisprudence. By way of background, this Court promulgated Rule 600, as well as its predecessor Rule 1100, in response to the Supreme Court of the United States' decision in *Barker v. Wingo*, 407 U.S. 514 (1972), in order to provide a concrete standard for effectuating and protecting a defendant's constitutional

right to a speedy trial under the Sixth Amendment to the United States Constitution[4] and Article I, Section 9 of the Pennsylvania Constitution.[5]

The right to a speedy, public trial is "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). Because the exercise of the government's power to detain an individual pending a criminal prosecution places a heavy burden upon the accused, the speedy trial guarantee "is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120 (1966). For a person subject to pre-trial incarceration:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.

*Barker*, 407 U.S. at 532-33. Moreover, even for an individual who secures his release on bail and will await trial outside of a jail cell, the foreboding promise of an impending prosecution is a heavy weight to carry. "[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of

---

[4]    The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" U.S. CONST. amend. VI. The Sixth Amendment's speedy trial guarantee was made applicable to the states through the Fourteenth Amendment. *See Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967); *Smith v. Hooey*, 393 U.S. 374, 374-75 (1969).

[5]    Article I, Section 9 of our Commonwealth's charter provides that, "[i]n all criminal prosecutions the accused hath a right to . . . a speedy public trial by an impartial jury of the vicinage[.]" PA. CONST. art. I, § 9.

anxiety, suspicion, and often hostility." *Id.* at 33. Because the power to deprive one of his liberty is of such consequence, and because the attendant disturbance to one's life is so momentous, the right to a speedy, public trial is a core component of the procedural rights afforded to the accused under the Constitution, "as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer*, 386 U.S. at 223.

In *Barker*, the Supreme Court of the United States articulated a standard for ascertaining when an individual has been deprived of the federal constitutional right to a speedy trial. Although the *Barker* Court adopted a multifactorial balancing inquiry[6] and found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," the Court held that individual states "are free to prescribe a reasonable period consistent with constitutional standards." *Barker*, 407 U.S. at 523. Following our decision in *Commonwealth v. Hamilton*, 297 A.2d 127 (Pa. 1972), this Court accepted *Barker*'s invitation, and implemented a rule-based right to a speedy trial, where speediness is measured by a particular number of days, thereby eliminating "the inherent vagueness encompassed in any balancing process" and avoiding "the necessity of a court determining a violation of this constitutional right on a case-by-case basis." *Id.* at 132-33; *see also Commonwealth v. Whitaker*, 359 A.2d 174, 176 (Pa. 1976) (noting that Rule 600 "represents this Court's determination that the 'balancing test' announced in *Barker* provides only the 'minimum standards guaranteed by the Sixth and Fourteenth Amendments,' and that such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth"). "Thus, a violation of Rule 600 may result in dismissal of charges even

---

[6] The *Barker* Court prescribed four factors to be weighed when considering a constitutional speedy trial claim: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.

where a court would not otherwise find a constitutional violation under the *Barker* factors." *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012).

Although Rule 600 was designed to protect the rights of the accused, the rule is not blind to the needs of the Commonwealth or its interest in prosecuting criminal offenders. We have described Rule 600 as "a careful matrix protecting a defendant's rights to be free from prolonged pretrial incarceration and to a speedy trial, while maintaining the Commonwealth's ability to seek confinement of dangerous individuals and those posing a risk of flight, and to bring its cases in an orderly fashion." *Commonwealth v. Dixon*, 907 A.2d 468, 473 (Pa. 2006). In fixing a general time frame of 365 days, the rule provides the Commonwealth with sufficient opportunity to prepare its case for trial, but seeks to minimize the harms to the accused that would result from a lengthier period. However, consistent with the rule's "dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases," *Bradford*, 46 A.3d at 701, the 365-day time limit is not absolute, and certain periods of delay are not to be held against the Commonwealth. Principally, and conceptually significant for purposes of the instant case, delays caused by the defendant do not count toward the 365 days provided to the Commonwealth. Because the Commonwealth is allotted the full time period within which to bring the defendant to trial, Rule 600 "seeks to prevent the Commonwealth from being accountable for those delays in the commencement of trial where they result from actions properly attributable to the defense." *Commonwealth v. Morgan*, 398 A.2d 972, 974-75 (Pa. 1979).

Since the origin of the rule, this Court has applied the intuitive precept that, where a defendant voluntarily fails to appear for a required court proceeding, the resulting delay is attributable to him alone, and shall be excluded from the time chargeable to the Commonwealth. When performing the Rule 600 computation, "the general rule is that,

where a period of delay is caused by the defendant's willful failure to appear at a court proceeding of which he has notice, exclusion is warranted." *Commonwealth v. Baird*, 975 A.2d 1113, 1118 (Pa. 2009); *see also Commonwealth v. Cohen*, 392 A.2d 1327, 1331 (Pa. 1978) (holding that "a defendant on bail who fails to appear at a court proceeding, of which he has been properly notified, is unavailable from the time of that proceeding until he is subsequently apprehended or until he voluntarily surrenders himself" and "the Commonwealth is entitled to an exclusion of this period . . . without the requirement of a showing of its efforts to apprehend the defendant during the period of his absence"). In both *Cohen* and *Baird*, the defendants failed to appear for their arraignments, resulting in delays excludable from the Rule 600 computation. *See Cohen*, 392 A.2d at 1329; *Baird*, 975 A.2d at 1114. This sensible exclusion applies equally to a defendant's absence from other pre-trial proceedings at which his appearance is required. By way of example, the Superior Court correctly deems excludable any delay caused by a defendant's failure to appear for a preliminary hearing. *See, e.g.*, *Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013), *aff'd on other grounds*, 107 A.3d 735 (Pa. 2014)[7]; *Commonwealth v. Peterson*, 19 A.3d 1131, 1137 (Pa. Super. 2012) (*en banc*), *aff'd*, 44 A.3d 655 (Pa. 2012).

In *Steltz*, this Court diverged from the general rule as it related to a defendant's failure to appear not for a pre-trial procedural hearing or appearance, but for a timely trial. Theodore Steltz initially appeared "on the day set for trial within the purview of Rule [600]." *Steltz*, 560 A.2d at 1390. However, before *voir dire* commenced, Steltz absconded from

---

[7]     In a *per curiam* order, this Court affirmed *Armstrong* upon the basis of the Superior Court's opinion, but we did not grant *allocatur* upon the Rule 600 issue raised therein. Accordingly, as to the proposition for which we presently cite *Armstrong*, the Superior Court's decision does not carry the same precedential value as an opinion of this Court. *See Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996). Herein, we cite the Superior Court's decision in *Armstrong* for illustrative purposes only.

the courthouse. He was apprehended eleven days later, and his trial was rescheduled for a date beyond the Rule 600 run date. On the date of the rescheduled trial, Steltz moved for dismissal, alleging that his rescheduled trial was untimely under the rule. The trial court granted Steltz's motion, and the Superior Court affirmed. This Court reversed and remanded Steltz's case for trial. With nary a mention of our earlier decision in *Cohen*, in which this Court held that a defendant's failure to appear "at a court proceeding" results in excludable time, *Cohen*, 392 A.2d at 1331, this Court held that Steltz's failure to appear for his timely trial resulted in *waiver* of his Rule 600 claim. Our reasoning, in its entirety, was as follows:

> One's voluntary absence from a day set for trial *within* Rule [600] is a waiver of that rule. Therefore, his trial thereafter is, [*sic*] at the reasonable convenience of the court and the prosecuting authorities. Rule [600] is a procedural rule designed to give reasonable parameters for the commencement of trial.
>
> It is a benefit to one charged that a trial date will be known as closely as possible on our crowded dockets. A trial date for one person is a delay for another. When they voluntarily absent themselves, for whatever reason, they go to the end of the line and must wait their turn after the convenience of the others their absence delayed. We cannot, with limited facilities, let one set the rules according to their whim, convenience or wrong.

*Steltz*, 560 A.2d at 1391 (emphasis added).[8]

This Court has applied our holding in *Steltz* on one other occasion.[9] In *Brock*, John Brock failed to appear for his scheduled trial date, and spent multiple months as a fugitive

---

[8] Although one might question the reasoning behind the *Steltz* Court's adoption of a strict waiver rule in lieu of the excludable time framework that generally applies to delays caused by a defendant's failure to appear—a holding that the *Steltz* Court did not support by reference to the text of the rule or any decisional law—Barbour does not ask this Court to reconsider the viability of *Steltz*. Moreover, because the instant case is readily distinguishable, we decline to revisit our holding in *Steltz sua sponte*.

[9] Former Chief Justice, then-Justice, Castille advocated for application of the *Steltz* waiver rule in his concurring opinion in *Commonwealth v. Shaffer*, 712 A.2d 749 (Pa.

before being arrested in another county. Upon his return to the jurisdiction, Brock orally moved for dismissal pursuant to Rule 600. The trial court granted his motion, and the Superior Court affirmed. Importantly, the Superior Court concluded that the *Steltz* waiver rule was inapplicable, reasoning that "a trial commences under Rule 600 when the first substantial step toward the guilt-determining process occurs, and, because there was no evidence that such [a] first step occurred on [his original trial date], trial had not commenced, and thus Brock had not waived his Rule 600 claim." *Brock*, 61 A.3d at 1017.

This Court disagreed. First, we held that Brock's Rule 600 claim was deficient in that he had made an oral motion only. We "reiterate[d] that a motion to dismiss pursuant to Pa.R.Crim.P. 600 must be made in writing, and a copy of such motion must be served on the Commonwealth's attorney." *Id.* at 1020. Second, we held that the Superior Court erred in its attempt to distinguish *Steltz*. After reviewing the language of Rule 600 and its accompanying commentary, we agreed with the Superior Court that the "commencement of trial" for purposes of the rule is to be "marked by a substantive, rather than a *pro forma* event." *Id.* at 1021. Such a requirement, we explained, "prevents the Commonwealth from manipulating the Rule 600 clock by initiating superficial or non-substantive court proceedings," and "places an obligation on the Commonwealth to ensure that the spirit behind Rule 600 is not compromised." *Id.* at 1021-22 (emphasis omitted). However, we concluded that the delay resulting from Brock's absconsion implicated the concerns that this Court articulated in *Steltz*, regardless of whether the trial was deemed to have "commenced." We reasoned that the "impact of the defendant's failure to appear is

---

1998), because the defendant therein had failed to appear for a timely trial. However, the lead opinion, authored by former Chief Justice Cappy, neither applied nor discussed *Steltz*, despite Justice Castille's invocation of its waiver rule. Instead, the plurality found that the trial court had abused its discretion by dismissing criminal charges as a sanction upon the prosecutor, who had planned a vacation during the scheduled trial term. *See Shaffer*, 712 A.2d at 752-53.

equally adverse regardless of the stage of the proceedings; once a case has been [ ] listed for trial, it is irrelevant whether the defendant absents himself before the proceedings commence or after a substantive event had occurred, as in *Steltz*." *Id.* at 1022. We added that a "defendant cannot be permitted to frustrate the judicial process in this manner." *Id.* Accordingly, we held that the circumstance was indistinguishable from *Steltz*, and that Brock had waived his Rule 600 claim by failing to appear for his scheduled trial.

As the parties to the instant case both note, this Court's opinion in *Brock* did not review the details of the trial court's Rule 600 computation or otherwise note whether Brock's initial trial date was timely under the rule. As Barbour argues, however, this omission is easily explained by the *Brock* Court's focus upon the Superior Court's stated rationale, which centered upon the determination of when a trial may be deemed to "commence" for purposes of Rule 600. The Superior Court in *Brock* did not attempt to distinguish *Steltz* upon the timeliness of the original trial date, but rather upon the nonexistence of a substantive event to mark the "commencement" of the trial. A review of the Superior Court's memorandum in *Brock*, however, reveals that Brock's original trial date was indeed timely under Rule 600—a conclusion with which this Court took no issue. *See Commonwealth v. Brock*, 435 EDA 2008, slip op. at 10 (Pa. Super. June 8, 2010) (unpublished) (noting that, by the date of Brock's original trial, "252 days chargeable to the Commonwealth had elapsed").

As is evident, and as the Superior Court in the instant case recognized, this Court in *Steltz* and *Brock* addressed the consequence of a defendant's failure to appear for a trial that was timely under Rule 600. In contrast, the instant case presents a circumstance where the trial court found a Rule 600 violation that predated Barbour's failure to appear—

a violation wholly independent from and in no way caused by Barbour's later absence from trial. We conclude that this distinction is significant and, indeed, dispositive.

As set forth above, in assessing any period of delay under Rule 600, it is critical to ascertain the *cause* of such delay. Stated in the most general terms, when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes delay, the clock stops. This causal relationship between a period of delay and the actions of the parties is a cornerstone not only of the Rule 600 computation, but also of longstanding constitutional speedy trial jurisprudence, as evidenced by the *Barker* Court's inclusion of "the reason for the delay" among the factors to be weighed when considering a speedy-trial claim. *See Barker*, 407 U.S. at 530-31. In *Steltz*, this Court stressed that the defendant's initial trial date was timely, and that his rescheduled trial facially lay beyond the Rule 600 run date due solely to his absconsion. In such a circumstance, we deemed waiver of the defendant's Rule 600 rights to be a suitable consequence for the defendant's misconduct. Notably, federal appeals courts have applied a similar analysis when considering constitutional speedy-trial claims implicating delays caused by a defendant's unlawful flight or fugitive status. *See*, *e.g.*, *Cates v. United States*, 379 A.2d 968, 972 (D.C. Cir. 1977) ("[W]here the defendant's unlawful flight or hiding out *is the reason for the delay* in his trial, he is held to have waived his right to a speedy trial.") (emphasis added); *United States v. Cartano*, 420 F.2d 362, 364 (1st Cir. 1970) ("Defendant cannot complain of *any delay attributable to his flight or unavailability*.") (emphasis added).

This Court has stressed that Rule 600 "was never intended to be used as a device by which a defendant may escape responsibility for his actions." *Commonwealth v. Guldin*, 463 A.2d 1011, 1014 (Pa. 1983); *see also Commonwealth v. Brightwell*, 406 A.2d 503, 506 (Pa. 1979) (Opinion in Support of Affirmance) ("While Rule [600] is a shield to

protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct."). Where, however, the Commonwealth violates Rule 600 before a defendant causes additional delay, concerns relating to the possibility that a defendant may seek to benefit from his own wrongdoing are not implicated. In this regard, we approve of the reasoning that the Superior Court applied in *Commonwealth v. Colon*, 87 A.3d 352 (Pa. Super. 2014), to the extent that the court concluded that defense-caused delays occurring after the expiration of the Rule 600 time period were irrelevant to the prompt-trial analysis. *See id.* at 358 (reasoning that the "delays attributable to Appellant occurred well after 365 days had already passed since the filing of the complaint, and have no bearing on the Commonwealth's failure to commence trial before the expiration of the mechanical run date").

In this case, by the time that Barbour failed to appear for trial, the dictates of Rule 600 already had been transgressed, and Barbour's right to relief had vested. On this point, Judge Bowes' reasoning and interpretation of the *Steltz* waiver rule was sound:

> Waiver of the rule-based right to a speedy trial is justified when a defendant fails to appear for a date within Rule 600 for a simple reason: he could have had a timely trial by appearing. . . . Here, the trial court has determined [Barbour] was denied the right to timely trial, even if he had appeared in October of 2004. All that remained for him to do was request dismissal.

Concurring Memorandum at 2-3.

We likewise agree with the trial court that, "[b]ecause the Rule 600 violations . . . occurred before [Barbour] had absconded, the Commonwealth's argument regarding 'procedural gamesmanship' is totally misplaced." Trial Ct. Op., 4/2/2015, at 22. To be sure, it would be absurd to permit a defendant to "game the system" by unlawfully absconding from trial, then invoking the resultant delay as grounds for dismissal under

Rule 600. *Steltz* precludes precisely this type of "gamesmanship." However, that is not what Barbour did in this case. Barbour does not contend that he was deprived of a speedy trial due to the delay arising from his failure to appear on October 18, 2004. Rather, he argues that the trial on that date was untimely in the first instance, and without regard to any subsequent delay. Although the Commonwealth suggests that Barbour seeks to profit from his wrongdoing, and that to afford him relief would be to grant him a windfall, it overlooks a countervailing consideration. The Commonwealth also may not benefit from its own fault, and the dereliction of its duty to provide a speedy trial may not be excused simply because Barbour happened not to appear for his untimely trial. To ignore the Commonwealth's prior failure to satisfy Rule 600, and to find that Barbour waived his right to seek relief—thereby not only stopping the Rule 600 clock, but essentially breaking it entirely—would be to grant the *Commonwealth* a windfall. This we will not do.

We acknowledge that there is some appeal to the Commonwealth's argument that, in order to ascertain a Rule 600 violation, a court must consider the merits of a Rule 600 motion, which a court should not entertain if the claim has been waived. However, the Commonwealth's proposed solution to this procedural quandary is to conclude that the *Steltz* waiver rule applies categorically to all failures to appear for trial, without consideration of whether the Commonwealth failed to satisfy its obligations under Rule 600 in the first instance. Although this would be a simple resolution, we will not sacrifice a defendant's right to a speedy trial for the sake of mere expedience. Rather, we hold that, in order to avoid a determination that the *Steltz* waiver rule precludes relief, a defendant in this circumstance simply may aver in his Rule 600 motion that his initial trial date was untimely, without regard to any subsequent period of delay. He then must be afforded an opportunity to prove that assertion. However, should the challenged trial date appear facially timely, *i.e.* within 365 days from the filing of the criminal complaint, and

the complained-of delay clearly resulted from the defendant's failure to appear on that date, then the court may find that the defendant's Rule 600 claim is waived pursuant to *Steltz*.

Turning to the alternative suggestion that Barbour forfeited his right to seek relief under Rule 600 by waiting nearly ten years to seek dismissal, we agree with Barbour that Judge Bowes' approach is foreclosed by the plain language of Rule 600. The rule unambiguously provides that, when a defendant has not been brought to trial within the time period set forth therein, "*at any time before trial*, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 600(D)(1) (emphasis added). After his arrest in September 2014, Barbour's trial was scheduled for October 20, 2014. Barbour moved for dismissal under Rule 600 on October 3, 2014. Accordingly, the timing of Barbour's motion complied with the rule.

Judge Bowes may very well have been correct that the ten years that elapsed while these cases remained pending may have caused ADA Carroll's memory of the proceedings in 2004 to fade. However, given ADA Carroll's testimony regarding the exceedingly informal nature of criminal proceedings in Washington County during the relevant time period, and considering the apparent lack of sufficient recordkeeping on the part of the prosecutor, one can hardly conclude that blame for the Commonwealth's inability to establish the procedural history of these cases lies solely with Barbour. If Barbour originally had been scheduled for trial on some date before October 2004, as Judge Bowes speculated, then the Commonwealth should have been able to produce some manner of evidence to support that assertion. As this Court previously has stressed:

> It would be easy to maintain a diary book where the relevant dates in a given prosecution could be promptly entered and checked against the Rule [600]

run date as a matter of course. Practicing lawyers must maintain docket books to make sure that they appear in court on the right date, file pleadings on time, complete discovery in a timely fashion, and do not run afoul of statutes of limitation. No less is required of a properly administered district attorney's office. It is no less important for a prosecutor than for any other attorney to maintain adequate records relating to the status of his cases.

*Commonwealth v. Browne*, 584 A.2d 902, 906 (Pa. 1990).

In sum, we conclude that the *Steltz* waiver rule is narrow in scope, and applies only where a defendant fails to appear for a trial that complied with the requirements of Rule 600. Where, as here, a Rule 600 violation is independent from and unrelated to a defendant's subsequent failure to appear, that violation is not cured by the defendant's absence. Two wrongs do not make a right, and a defendant's failure to satisfy his obligation to appear in court does not excuse the Commonwealth's earlier failure to satisfy its obligations under Rule 600.

The order of the Superior Court is reversed.

Chief Justice Saylor and Justices Baer, Todd, Donohue and Dougherty join the opinion.

Justice Mundy did not participate in the consideration or decision of this case.