J. S33035/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| AARON LASHAY WILSON, | : | No. 729 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered October 20, 2017,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0006266-2015


BEFORE:  LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 22, 2019**

Aaron Lashay Wilson appeals from the October 20, 2017 judgment of

sentence entered by the Court of Common Pleas of York County following his

conviction of possession of a controlled substance with intent to deliver.[1]  After

careful review, we affirm.

The trial court set forth the following:

> [Appellant] was first brought to trial on September 20,
> 2016.  However, upon being informed at the
> courthouse prior to the commencement of jury
> selection that Officer Michelle Miller was going to
> testify, [appellant] fled the courthouse and a bench
> warrant was issued.  [Appellant] was eventually
> apprehended and brought to trial again on March 9th,
> 2017, but [appellant's] counsel did not appear when
> the trial was to commence.  [Appellant] then moved
> for dismissal or release on nominal bail pursuant to

---

[1] 35 P.S. § 780-113(a)(30).

Pennsylvania Rule of Criminal Procedure 600 on April 5th, 2017, which the [trial c]ourt denied.

Finally, a jury trial on [appellant's] charge commenced on September 12, 2017. The Commonwealth first called Officer Adam Bruckhart. Officer Bruckhart testified about a controlled drug buy using the confidential informant [("C.I.")] that targeted [appellant], which was conducted on October 7th, 2014. The [C.I.] Officer Bruckhart employed was deemed reliable.

On October 7th, 2014, Officer Bruckhart had the [C.I.] call a target known as "A-Will" at the phone number 717-[xxx-xxxx], and set up a buy for one eighth ounce of cocaine. On the other end of this call, Officer Bruckhart heard what he described as a male voice. Prior to the transaction, Officer Bruckhart searched the [C.I.] for any money or contraband, detecting nothing.

Officer Bruckhart then turned the [C.I.] over to Officer Michelle Miller, along with $180.00 in official funds. Officer Bruckhart then traveled to the Pak's Grocery Store on East Princess Street in York and set up a vantage point to maintain surveillance of the transaction, approximately 100 feet away. Officer Bruckhart observed [appellant] arrive at the location in his vehicle. He then observed Officer Michelle Miller arrive in a separate vehicle with the [C.I.] Officer Bruckhart observed the [C.I.] exit Officer Miller's vehicle and get into [appellant's] vehicle. The officer observed "some interaction" in the car, then the [C.I.] exited [appellant's] vehicle, got into Officer Miller's car, and Officer Miller and the [C.I.] drove away. After the interaction, Officer Miller presented Officer Bruckhart with an eighth of an ounce of crack cocaine.

Officer Bruckhart testified that while the lighting conditions were not conducive to take clear photographs of the interaction, and there was no security camera footage of the buy, he could see the interaction very well and had no blockages of his

sightline. The police did not arrest [appellant] directly after the October 7th, 2014 transaction, but instead began surveillance of [appellant] and noticed him driving the same vehicle he brought to the drug buy.

The Commonwealth next called Officer Michelle Miller. Officer Miller testified that she transported the [C.I.] to the location of the transaction and provided the [C.I.] with the $180.00 in official funds. Officer Miller testified that at the time of the transaction, while it was not bright daylight, she could still see everything that was going on. When the Officer and the [C.I.] arrived at the location of the deal, they pulled up beside a blue Volvo, occupied by [appellant]. The [C.I.] exited Officer Miller's vehicle and got into [appellant's] vehicle, sitting in the front passenger seat. Officer Miller then witnessed the [C.I.] hand the official funds to [appellant] and [appellant] hand something back to the [C.I.] The [C.I.] next came back to Officer Miller's vehicle and handed her a bag of cocaine, which was then turned over to Officer Bruckhart.

The Commonwealth then called Sheriff's Deputy Moses Wogu, who testified that on September 20, 2016 he was working as a Sheriff's Deputy in Judge Richard K. Renn's courtroom in York when [appellant] was called in for a jury trial for [this] charge[]. Deputy Wogu stated that [appellant] was in the courtroom initially, but after a 15 minute break prior to beginning jury selection, [appellant] was nowhere to be found in the courthouse and a bench warrant was issued for his arrest.

[Appellant] then elected to take the stand and testify. [Appellant] testified that he has never owned or driven a blue Volvo, nor has he seen Officer Miller before the day of trial. He also stated that he never lived at the residence upon which the police did their surveillance. [Appellant] did admit that on the date of the previous trial, September 20th, 2016, that he panicked and left the courthouse after finding out Officer Miller was going to testify, because he felt "blindsided."

> Both parties then gave their closing arguments, the jury instructions were given, and the jury retired to deliberate.

Trial court opinion, 2/11/19 at 2-5 (citations to the record and extraneous capitalization omitted).

On appeal, appellant raises the following issues for our review:

[I.] Whether this Court has jurisdiction over this appeal where [appellant] timely filed a post-sentence motion[?]

[II.] Whether the [trial] court erred in failing to sustain [appellant's] challenge to the weight of the evidence where his conviction hinged on an extremely unreliable eyewitness identification backed with no substantial corroboration[?]

[III.] Whether the trial court erred in denying [appellant's] Motion to Dismiss for Violation of Rule 600 where excluding the delay caused by his absconding from trial and other appropriate deductions—instead of deeming the claim waived—leaves 480 days' delay[?]

Appellant's brief at 5.[2]

As noted by appellant's first issue, we must initially determine whether we have jurisdiction to entertain this appeal. On September 14, 2017, the jury convicted appellant of the aforementioned crime. The trial court sentenced appellant to 5½ to 11 years of incarceration and imposed a fine on October 20, 2016. Appellant prepared a **_pro se_** post-sentence motion and provided the motion to prison officials for mailing on October 24, 2017. **_See_**

---

[2] Appellant's issues on appeal have been re-ordered for ease of our discussion.

*Smith v. Pa. Bd. Of Prob. and Parole*, 683 A.2d 278, 281 (Pa. 1996); *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997) (holding that under the prisoner mailbox rule, a document is deemed filed the day the document is provided to prison officials for mailing). Appellant filed a *pro se* amended post-sentence motion on November 12, 2017. Appellant's post-sentence motions and amended post-sentence motion were forwarded to appellant's counsel, Roy Galloway, III, Esq., pursuant to Pa.R.Crim.P. 576(A)(4). *See also Commonwealth v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011) (mandating that trial courts refer *pro se* pleadings from represented litigants to counsel and take no further action on the *pro se* pleading unless counsel forwards a motion).

Pursuant to Rule 576(A)(4) and *Jette*, the trial court did not initially act on either of these motions. Appellant filed a *pro se* notice of appeal, which was docketed on April 6, 2018, and forwarded to Attorney Galloway. On April 18, 2018, Attorney Galloway filed a petition for leave of court to withdraw his appearance, which the trial court granted on April 25, 2018. On April 30, 2018, appellant filed another *pro se* notice of appeal to this court.

The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on May 1, 2018. On May 15, 2018, appellant filed an application for appointment of counsel. While his application was pending, appellant filed a *pro se* concise statement of errors complained of on appeal. The trial court appointed Brian McNeil, Esq.,

of the York County Office of the Public Defender to represent appellant on direct appeal. Attorney McNeil filed a praecipe on June 4, 2018, for the trial court to enter an order denying appellant's *pro se* post-sentence motion by operation of law. The trial court entered an order denying appellant's post-sentence motion by operation of law on June 8, 2018. Attorney McNeil then filed an amended Rule 1925(b) statement on August 2, 2018, with leave of court. The trial court then filed an opinion pursuant to Pa.R.A.P. 1925(a).

On August 27, 2018, this court entered an order directing appellant to show cause why his appeal should not be quashed as untimely filed. Appellant filed a response in which he indicated that his *pro se* post-sentence motion dated October 24, 2017, tolled the period in which he could file a notice of appeal. On September 21, 2018, this court discharged its rule to show cause, referring the appealability issue to the merits panel.

The Commonwealth contends that appellant's appeal should be quashed as untimely filed because appellant filed a *pro se* post-sentence motion while he was still represented by counsel, thus rendering the post-sentence motion a legal nullity. (Commonwealth's brief at 17-18.) Therefore, the Commonwealth argues that appellant's notice of appeal was not timely filed. (*Id.* at 20.)

In order to invoke the appellate jurisdiction of this court, a notice of appeal must be filed within 30 days of the entry of an appealable order or judgment of sentence. *In re K.P.*, 872 A.2d 1227, 1230 (Pa.Super. 2005),

citing Pa.R.A.P. 903(a). In criminal cases where post-sentence motions are filed, the period in which to file a direct appeal is tolled and does not begin to run until the motion is decided. ***Commonwealth v. Capaldi***, 112 A.3d 1242, 1244 (Pa.Super. 2015), citing Pa.R.Crim.P. 720(A)(2); Pa.R.A.P. 903(a).

It is well settled, however, that hybrid representation is not permitted in this Commonwealth. ***Commonwealth v. Williams***, 151 A.3d 621, 623 (Pa.Super. 2016). A ***pro se*** filing of post-sentence motions by a litigant represented by counsel is considered a legal nullity. ***Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa.Super. 2007), citing ***Commonwealth v. Piscanio***, 608 A.2d 1027, 1029 n.3 (Pa. 1992).

Our cases have recognized an exception to the rule against hybrid representation. Indeed, this court recognized that in cases where a defendant is effectively abandoned by his counsel and the trial court fails to appoint new counsel in a timely manner, a defendant's ***pro se*** filing while still represented by counsel "does not offend considerations of hybrid representation." ***Commonwealth v. Leatherby***, 116 A.3d 73, 79 (Pa.Super. 2015).

Here, the record reflects that during sentencing, the trial court stated that appellant's counsel[3] would "continue to act as counsel for [appellant] . . . unless an order stating otherwise is entered." (Notes of testimony, 10/20/17 at 22.) Appellant filed a ***pro se*** post-sentence motion four days after being

---

[3] At the sentencing hearing, appellant was represented by Attorney Martin from Attorney Galloway's firm. (Notes of testimony, 10/20/17 at 2.) Attorney Martin's first name was not included in the record. (***Id.***)

sentenced by the trial court on October 24, 2017. Appellant then filed a *pro se* amended post-sentence motion on November 12, 2017. Despite being served with copies of appellant's post-sentence motion and amended post-sentence motion, Attorney Galloway took no action in this case until after appellant filed his first *pro se* notice of appeal, when Attorney Galloway filed his motion to withdraw on April 18, 2018.

Based on our review of the record, we find that Attorney Galloway effectively abandoned appellant and that appellant filed a *pro se* post-sentence motion, despite the fact that he was represented by counsel, in order to preserve his direct appellate rights. *See Leatherby*, 116 A.3d at 79. Accordingly, we have jurisdiction to reach the merits of appellant's remaining issues.

In his second issue, appellant avers that the jury's verdict was against the weight of the evidence. Appellant specifically claims that his conviction "hinged on an extremely unreliable eyewitness identification backed with little in the way of corroboration." (Appellant's brief at 24.)

We review weight of the evidence claims under the following standard or review:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> *Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa.Super. 2016), (quoting *Commonwealth v. Clay*, [], 64 A.3d 1049, 1054-1055 ([Pa.] 2013)). To successfully challenge the weight of the evidence, a defendant must prove the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Mucci*, 143 A.3d at 411 (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003)).

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017), *appeal denied*, 171 A.3d 1286 (Pa. 2017).

Determining the reliability of an eyewitness is solely within the purview of the jury, as the jury is free to believe all, part, or none of the eyewitness's testimony. *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1140 (Pa.Super.

2017), *appeal denied*, 186 A.3d 941 (Pa. 2018), citing *Commonwealth v. Lambert*, 795 A.2d 1010, 1014 (Pa.Super. 2002) (*en banc*), *appeal denied*, 805 A.2d 521 (Pa. 2002).

Here, appellant challenges the reliability of Officer Miller's eyewitness testimony. In declining to find that the conviction was against the weight of the evidence, the trial court determined that Officer Miller's testimony was corroborated by Officer Bruckhart and that the weight of the evidence was not against appellant's conviction. We find no abuse of discretion in such a conclusion. Accordingly, appellant's weight of the evidence claim is without merit.

In his final issue, appellant contends that the trial court erred when it denied appellant's Rule 600 motion to dismiss. (Appellant's brief at 34.) The Commonwealth argues that because appellant absconded on the original date his case was called to trial, he waived any Rule 600 claim. (Commonwealth's brief at 21, citing *Commonwealth v. Steltz*, 560 A.2d 1390 (Pa. 1988), and *Commonwealth v. Brock*, 61 A.3d 1015 (Pa. 2013).) Appellant counters with an argument that our supreme court's recent holding in *Commonwealth v. Barbour*, 189 A.3d 944 (Pa. 2018), "signal[ed] an intent to abandon [the rule established in *Steltz* and *Brock*] and simply deduct the delay caused by absconding." (Appellant's brief at 34.)

As noted by the Commonwealth, the *Steltz* court held that a "voluntary absence from a day set for trial **within** Rule [600] is a waiver of that rule."

*Steltz*, 560 A.2d at 1391 (emphasis added). Our supreme court reaffirmed the *Steltz* holding in *Brock*. *Brock*, 61 A.3d at 1022. *Barbour* does not represent the abandonment of *Steltz* and *Brock* that appellant suggests. Rather, *Barbour* restates the holding in *Steltz* and reaffirms that the waiver rule applies "only where a defendant fails to appear for a trial that complied with the requirements of Rule 600." *Barbour*, 189 A.3d at 960-961. Accordingly, our initial inquiry is whether appellant's original trial date of September 20, 2016, complied with Rule 600.

> In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances the defendant requested and any periods for which he expressly waived his rights under Rule 600. Pa.R.Crim.P. 600(C). "A defendant has no duty to object when his trial is scheduled beyond the Rule [600] time period so long as he does not indicate that he approves of or accepts the delay." *Commonwealth v. Taylor*, 598 A.2d 1000, 1003 (Pa.Super. 1991), *appeal denied*, 613 A.2d 559 (Pa. 1992) (addressing Municipal Court's counterpart to speedy trial rule).

*Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa.Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005).

Here, appellant's original trial date was September 20, 2016 – 509 days after the complaint was filed in this case on April 30, 2015. Appellant concedes that 171 days between the day the complaint was filed and his original trial date are excludable for the purposes of Rule 600. (Appellant's brief at 35-36.) Taking into account the excludable time, the adjusted run-date for appellant's

trial was October 18, 2016. Appellant was called for trial well within the adjusted run-date. We, therefore, find that appellant, through his voluntary absence from the original day set for his trial within the Rule 600 time-frame, waives his Rule 600 claim.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2019