J-A10005-20

2020 PA Super 227

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRANCE MORGAN | : | |
| | : | |
| Appellant | : | No. 2896 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 8, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0007266-2008

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

OPINION BY BOWES, J.:                              Filed: September 17, 2020

Terrance Morgan appeals from his July 8, 2019 judgment of sentence imposed after he was found guilty of escape.  After careful review, we vacate Appellant's judgment of sentence and reverse his conviction due to the Commonwealth's failure to exercise due diligence under Pa.R.Crim.P. 600.

On October 10, 2008, Mr. Morgan absconded from a work release program while serving a criminal sentence for robbery.  That same day, the Bucks County Sheriff's Office ("BCSO"), filed a written complaint charging Appellant with escape and a magisterial district judge issued a warrant for his arrest.  On October 16, 2008, BCSO received notice that Appellant was being held on separate homicide and firearms charges at the Richmond County Jail in the State of Georgia.  The next day, a preliminary hearing was held *in absentia* and Appellant was declared a fugitive.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On October 23, 2008, BCSO sent a fax to Georgia authorities requesting that a detainer be placed on Appellant, and that extradition proceedings be commenced.[1] **See** BCSO Fax, 10/23/08 ("Please lodge our detainer on [Appellant]. We will extradite on this matter."). The next day, Appellant signed a waiver of extradition. On October 28, 2008, BCSO received an email from the Richmond County Sheriff's Office in Georgia attaching a copy of Appellant's executed waiver. It also informed BCSO of Appellant's status:

> I have attached [Appellant's] signed waiver of extradition to this email. But, just to keep you informed his local charges [(m]urder, [p]ossession of a firearm during the commission of a crime) are still pending. If he goes to prison in Georgia for these charges I will let you know, but you will then have to inform [the Georgia Department of Corrections ("GA DOC")] that you need a hold placed on him. . . . If you have any questions, just call or email.

Richmond County Email of 10:40 a.m., 10/28/08. Thus, BCSO was advised that once Appellant was presumably convicted of and sentenced on these

---

[1] "Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner or notify the requesting state of the prisoner's imminent release." **Commonwealth v. J. Booze**, 953 A.2d 1263, 1266 n.2 (Pa.Super. 2008) (citing **Commonwealth v. Williams**, 896 A.2d 523, 536 n.5 (Pa. 2006)).

There are cooperative procedures in place for jurisdictions to temporarily exchange custody of incarcerated individuals like Appellant, including the Interstate Agreement on Detainers ("IAD"). "The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner." **Id**. at 1266 n.3.

charges, the Richmond County Sheriff's Office would alert BCSO. However, BCSO was also put on notice that it would need to secure a separate detainer with GA DOC, and then consummate the extradition process.[2] *Id*.

On February 25, 2010, Appellant was adjudged guilty of involuntary manslaughter and possession of a firearm during the commission of a crime in Georgia, and sentenced to an aggregate term of ten to twenty years of incarceration. On July 7, 2010, Appellant was transferred to Valdosta State Prison to serve his Georgia sentence. There is no indication that the Richmond County Sheriff's Office contacted or informed BCSO of these events.

Nonetheless, BCSO took no other steps to secure a detainer with GA DOC or to effectuate Appellant's extradition for approximately four years from their last contact with Georgia officials. On September 4, 2012, BCSO sent an email to the Richmond County Sheriff's Office, requesting an update on Appellant: "The last note in file was he waived extradition but had locals, any way of an updated status on him."[3] BCSO Email of 10:13 a.m., 9/4/12.

_____

[2] We discern that BCSO intended to extradite Appellant pursuant to IAD procedures. *See* BCSO Fax, 6/18/18 (requesting GA DOC to "[p]lease start an IAD."). Such extradition was not possible until Appellant was convicted and began serving his criminal sentence in Georgia. "The IAD applies only to persons serving sentences in other jurisdictions, not to those merely incarcerated while awaiting the disposition of criminal charges against them. *J. Booze*, *supra* at 1266 n.4 (citing *Commonwealth v. McNear*, 852 A.2d 401, 405 n.3 (Pa.Super. 2004)).

[3] This follow-up email was prompted by a change in personnel at BCSO. *See* BCSO Email, 9/4/12 (indicating that a new investigator had taken over and was checking on the status of Appellant's case due to its inactivity). During

The Richmond County Sheriff's Office responded that same day: "I have looked into your question and have some follow up on your defendant. On July 7th, 2010[, Appellant] was shipped to prison. He is now housed at Valdosta State Prison in Valdosta, Georgia . . . for [v]oluntary [m]anslaughter. In order to place a hold for your agency on this defendant, please make contact with [GA DOC]." Richmond County Email of 12:36 p.m., 9/4/12.

In response, BCSO sent the following fax to the records department at Valdosta State Prison:[4] "Please be advised we lodged this warrant with [the Richmond County Sheriff's Office] and the Richmond Co[.] Jail, 10/23/2008[. We] still want [Appellant,] please lodge against him. Any questions please contact me at the above information." BCSO Fax Message, 9/4/2012. BCSO received no response or acknowledgement of this message. Thereafter, BCSO took no further action for six additional years.

On June 18, 2018, BCSO faxed another request for the entry of a detainer on Appellant to GA DOC.[5] That same day, GA DOC sent an

_____

the course of BCSO's stewardship of Appellant's case, it was transferred among at least three different investigators.

[4] The individual nominally associated with Valdosta State Prison was not amongst the contacts provided to BCSO by the Richmond County Sheriff's Office, and the certified record is silent as to why BCSO elected to fax them.

[5] It is unclear from the certified record what prompted BCSO to inquire about Appellant's status nearly six years after it faxed GA DOC. There is no indication that GA DOC alerted BCSO that Appellant's release was imminent prior to this fax message in 2018. The only other relevant event immediately preceding BCSO's belated message noted in the certified record was an audit of the BCSO offices, which apparently began on May 31, 2018.

acknowledgement confirming the entry of the detainer. By this point, Appellant had been incarcerated in Georgia for nearly a decade and was scheduled to be released on October 15, 2018. BCSO finally took him into custody on October 25, 2018.

Appellant filed an omnibus pretrial motion requesting that his case be dismissed pursuant to Rule 600(a)(2)(A). Specifically, Appellant argued that the Commonwealth had failed to exercise due diligence in making him available for trial. *See* Appellant's Omnibus Motion, 1/7/19, at ¶ 13. A hearing on Appellant's Rule 600 motion was held. Following extensive testimony from BCSO, the trial court denied Appellant's motion.

On April 1, 2019, a bench trial was held on the outstanding escape charge. On the basis of stipulated and uncontested factual evidence, the trial court found Appellant guilty of escape. On September 8, 2019, Appellant was sentenced to three and one-half to seven years of incarceration.[6] Appellant filed a timely appeal.[7] Both Appellant and the trial court timely complied with Pa.R.A.P. 1925.

Appellant has preserved and presented a single issue for our consideration: "Did the trial court err in denying Appellant's motion to dismiss as the Commonwealth had violated Appellant's speedy trial rights pursuant to

---

[6] At the time that he was sentenced on this charge, Appellant was also serving the balance of his outstanding robbery sentence.

[7] On October 4, 2019, the trial court entered an order restoring Appellant's direct appellate rights *nunc pro tunc* with the agreement of all parties. Appellant's notice of appeal was filed the same day.

Rule 600(A)(2)(a)?" Appellant's brief at 4. Specifically, Appellant argues that BCSO failed to exercise due diligence by not effectuating Appellant's extradition in a timely fashion. *Id*. at 11.

Our Supreme Court has provided a cogent and thorough discussion of our standard and scope of review in this context:

> Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will . . . discretion is abused. Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party.

*Commonwealth v. Selenski*, 994 A.2d 1083, 1087-88 (Pa. 2010) (internal citations and quotations omitted). Overall, Rule 600 protects "a defendant's speedy trial rights, as well as society's right to effective prosecution of criminal cases. To balance these rights, [Rule 600] requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control." *Id.* at 1088.

Appellant was charged on October 10, 2008, when BCSO filed a written complaint. As such, the Commonwealth was required to bring Appellant to trial within 365 days of that filing. *See* Pa.R.Crim.P. 600(A)(2)(a). Appellant was not brought to trial until April 1, 2019, or more than ten years after the expiration of Appellant's "mechanical" run date under Rule 600. However, our

calculation of Appellant's "adjusted" Rule 600 run date is more nuanced. ***See***

***Commonwealth v. Barbour***, 189 A.3d 944, 947 (Pa. 2018) ("[T]he Rule 600

run date may be adjusted pursuant to the computational directives set forth

in Subsection (C) of the Rule."). For the purposes of computing this time

under Rule 600, periods of delay at any stage of the proceedings that are

attributable to the Commonwealth's failure to exercise due diligence are

included in the computation of time within which trial must commence. ***See***

Pa.R.Crim.P. 600(C)(1). Any other periods of delay are excluded. ***Id***. "Stated

in the most general terms, when the Commonwealth causes delay, the Rule

600 clock continues to tick; when the defendant causes the delay, the clock

stops." ***Barbour***, ***supra*** at 958.

Instantly, Appellant's arguments are focused exclusively upon his

incarceration in Georgia, during which time he alleges that the Commonwealth

failed to exercise due diligence in securing him for trial.[8] ***See*** Appellant's brief

---

[8] The Commonwealth argues that because Appellant escaped, the entirety of his time spent incarcerated in Georgia should be excluded from our Rule 600 assessment. ***See*** Commonwealth's brief at 10 (citing ***Commonwealth v. Polsky***, 426 A.2d 610, 613 (Pa. 1981) ("[I]f the unavailability of the defendant causes a delay at an initial stage, the period of delay is excluded from the period set by [the speedy trial rule], regardless of what happens later.")). However, Pennsylvania law provides that a defendant is only deemed "unavailable" during time periods when his location and status cannot be discovered by due diligence. ***See Commonwealth v. Ingram***, 591 A.2d 734, 737 (Pa.Super. 1991).

Although Appellant absconded from his work-release program in 2008, he was quickly apprehended in Georgia on separate charges mere days later. In sum, Pennsylvania authorities were unaware of Appellant's location and status for

at 11 ("Appellant was available for trial as he was continuously incarcerated in the State of Georgia for ten years during which time the Commonwealth did not act with due diligence to bring him to trial.").

We note that "'mere incarceration in another state does not make a defendant unavailable within the meaning of Rule 600.'" **Commonwealth v. R. Booze**, 947 A.2d 1287, 1291 (Pa.Super. 2008) (quoting **Commonwealth v. Kubin**, 637 A.2d 1025, 1026 (Pa.Super. 1994)). Rather, "'[a] defendant is only unavailable if the delay in returning him to Pennsylvania is due to the other state causing the delay; the prosecution, however, must exercise due diligence in attempting to bring the defendant back for trial.'" **Id**.

The trial court concluded that the Commonwealth exercised due diligence simply by lodging the initial detainer with the Richmond County Sheriff's Office on Appellant in October 2008: "In sum, it was apparent to the Commonwealth in 2008 that the foreign jurisdiction would make Appellant available for trial in Bucks County only after his incarceration in Georgia had ended. Any further demand from the Commonwealth for extradition prior to [Appellant's] release from incarceration would have seemed futile." Trial Court Opinion, 11/20/19, at 7.

_____

only six days. In this respect, Appellant's absence from Pennsylvania after his arrest in Georgia was no longer the direct result of his voluntary decision to remain abroad. **Accord Commonwealth v. Barbour**, 189 A.3d 944, 958 (Pa. 2018) ("This causal relationship between a period of delay and the actions of the parties is a cornerstone of not only the Rule 600 computation, but also of longstanding constitutional speedy trial jurisprudence[.]").

Specifically, the trial court found Appellant's case analogous to this Court's holding in **Commonwealth v. McNear**, 852 A.2d 401 (Pa.Super. 2004). In that case, Pennsylvania authorities sought to extradite McNear to stand trial for narcotics charges while he was serving multiple sentences of incarceration in the State of New Jersey. **Id**. at 403-04. New Jersey opposed McNear's extradition and clearly communicated that he would not be made available for trial in Pennsylvania until his New Jersey sentences were completed. Approximately two years elapsed before McNear entered a guilty plea in Pennsylvania, and he argued that the Commonwealth had violated Rule 600 by not securing him for trial sooner. This Court held that "in view of the fact that the New Jersey authorities opposed extradition, the Commonwealth was not necessarily compelled to proceed . . . where to do so would no doubt have been fruitless." **Id**. at 407. Thus, we found the time period of Appellant's New Jersey incarceration to be excludable under Rule 600. **Id**.

**McNear** is inapposite to the present circumstances. The holding in that case was grounded in the existence of clear communications from the out-of-state officials indicating that it was unwilling to extradite the defendant. **Id**. Our review of the certified record in the present case reveals no such communications from GA DOC indicating that it was unwilling or unable to extradite Appellant during his post-conviction incarceration. To the contrary, the communications from the Richmond County Sheriff's Office advised only that Appellant would be unavailable for extradition while he was in custody during the adjudication of his charges. These communications do **not** suggest

that this unavailability extended to any resulting incarceration that might follow. Rather, the possibility of future extradition was explicitly left open, particularly in light of the fact that Appellant executed an anticipatory waiver of extradition.

Stated simply, the trial court's conclusion that BCSO somehow knew in 2008 that Georgia would be unwilling to extradite Appellant is unsupported by the certified record. In October 2008, Appellant had not yet been convicted or sentenced in Georgia. Thus, BCSO could only have been aware that: (1) Appellant's extradition would have to wait until the adjudication of his pending charges in Georgia; and (2) if Appellant was convicted, BCSO would have to file an additional detainer with GA DOC assuming Appellant received a state sentence of incarceration. Yet, BCSO took no action and made no further inquiries concerning Appellant for more than four years. For fully two of those years, Appellant had already been transferred to the custody of GA DOC.

BCSO finally followed up in September 2012, and was again informed of the necessity of lodging a detainer with GA DOC. BCSO may have faxed a detainer, but it obtained no response or acknowledgement that it had been received. Critically, GA DOC never advised that Appellant would be unavailable for extradition to Pennsylvania while he was serving his sentence until 2018. There is simply no indication in the certified record that GA DOC was unwilling or unable to extradite Appellant to Pennsylvania for trial prior to

- 10 -

that time.[9] Even viewing the available evidence in the light most-favorable to the Commonwealth, BCSO can only be fairly characterized as assuming without actual knowledge that Appellant was "unavailable" for nearly a decade. Thus, the PCRA court's reliance upon **McNear** is misplaced.

Instead, these periods of protracted delay speak to a significant lack of due diligence on the part of BCSO. Tellingly, BCSO offered no explanation for these periods of delay at the Rule 600 hearing. **See** N.T. Hearing, 1/23/19, at 66-69. In particular, our review of the certified record confirms two troubling chronological gaps in Appellant's case that evince a lack of due diligence by the Commonwealth: (1) the two-year period of delay from Appellant beginning to serve his sentence in GA DOC's custody until BCSO attempted to submit a detainer to GA DOC;[10] and (2) the six-year period delay

_____

[9] The June 18, 2018 acknowledgement that GA DOC sent to BCSO stated that Appellant would be unavailable for extradition until he had completed his sentence. By that point, mere months remained until Appellant's release date. This was the first and only communication that BCSO received from GA DOC indicating that Appellant was not readily available for extradition. Further, the certified record contains no other evidence to suggest that GA DOC's position regarding Appellant's need to complete his sentence was or would have been the same had the Commonwealth inquired earlier.

[10] Prior to Appellant's transfer to the custody of GA DOC, BCSO had lodged a valid detainer for his extradition. Once Appellant's began serving his sentence in the custody of GA DOC, that detainer was no longer valid. This was the potential issue that the Richmond County Sheriff's Department alerted BCSO to in multiple communications between 2008 and 2012. This time period represents the approximately two years during which Appellant was in GA DOC custody, and BCSO took no action regarding the case.

from BCSO's submission of an unanswered detainer to GA DOC in 2012 until BCSO sent another communication concerning his extradition in 2018.

With respect to the first period of time, BCSO waited approximately two years after Appellant began serving his sentence in GA DOC custody before even attempting to lodge a detainer with the proper authorities, or initiate extradition proceedings.[11]  Our case law is replete with precedent holding the Commonwealth accountable for such unexplained delays in initiating extradition proceedings.  **R. Booze**, **supra** at 1292-93 (holding time period during which Commonwealth failed to initiate extradition proceedings counted against them for speedy trial purposes); **see also Commonwealth v.**

_____

-[11]  We recognize that the Richmond County Sheriff's Office represented that it would inform BCSO if Appellant was convicted and sentenced.  **See** Richmond County Email of 10:40 a.m., 10/28/08.  We also note that Pennsylvania law enforcement officials are entitled to rely upon such representations in the context of Rule 600.  **See Commonwealth v. Emmett**, 417 A.2d 1232, 1235-36 (Pa.Super. 1979) (endorsing "reliance on other authorities" to inform the Commonwealth regarding the status of a case for speedy trial purposes).  However, such reliance must still be reasonable in scope and duration.  Even with valid assurances from the Richmond County Sheriff's Office, four years of inaction with no new information regarding Appellant's case (*i.e.*, from October 2008 until September 2012) evinces a lack of due diligence by BCSO.  **See**, **e.g.**, **Commonwealth v. Kubin**, 637 A.2d 1025, 1027-28 (Pa.Super. 1994) (holding that the Commonwealth has a duty to act or inquire in the face of inaction or silence from representatives of a foreign jurisdiction).

Even assuming, *arguendo*, the Commonwealth reasonably relied upon the Richmond County Sheriff's Office for the entirety of this four-year period, our holding would be unchanged.  After BCSO was informed of Appellant's incarceration and unsuccessfully attempted to lodge a detainer with GA DOC in September 2012, it then waited six years before taking any further action on Appellant's case.  During this second span of time, BCSO was **not** relying upon any relevant assurances from Georgia officials.

*Alexander*, 464 A.2d 1376, 1384-85 (Pa.Super. 1983) (same); *Commonwealth v. McNeal*, 396 A.2d 424, 426-27 (Pa.Super. 1978) (*en banc*) (same); *Commonwealth v. Kovacs*, 378 A.2d 455, 458 (Pa.Super. 1977) (*en banc*) (same). This first period of delay is readily analogous to the foregoing line of cases because BCSO has offered no cogent explanation or justification for its actions. Accordingly, this time counts against the Commonwealth for the purposes of calculating Appellant's Rule 600 run date.

Even after BCSO faxed a detainer to GA DOC in September 2012, it received no response or confirmation. Rather than following up in a timely fashion, BCSO elected to wait six additional years before inquiring about the status of Appellant's detainer and extradition. This period of time further evinces a lack of due diligence because BCSO did not receive any communications from Georgia officials confirming that a detainer had been lodged and the extradition process had been successfully initiated. "'While we recognize that the Commonwealth cannot force another jurisdiction to act, inaction on the Commonwealth's part, without some reliance on the assurances of the other state, does not constitute due diligence.'" *R. Booze*, *supra* at 1291 (quoting *Kubin*, *supra* at 1027).

This second period of delay is readily analogous to our holding in *Kubin*. In that case, the defendant was out on bail for criminal charges that were pending in Pennsylvania, but was separately arrested, convicted, and incarcerated in New Jersey while awaiting trial. The Commonwealth received notice that Kubin had waived extradition, and submitted a request for New

Jersey to extradite him for trial. New Jersey officials did not respond to the request, and the Commonwealth took no further action for 198 days. On appeal, this Court concluded that this period of time counted against the Commonwealth for the purposes of calculating whether it had violated Kubin's speedy trial rights: "Here, the [Commonwealth] did not rely on assertions from New Jersey officials that Kubin would not be returned. On the contrary, the extradition secretary failed to act despite being told by the New Jersey official that Kubin was not fighting extradition."[12] **Kubin**, **supra** at 1027.

Even in the absence of any obvious impediments to Appellant's extradition, BCSO failed to take any further action on its detainer and extradition request with GA DOC for nearly six years. As in **Kubin**, BCSO has offered no explanation for this lengthy oversight. Accordingly, this time counts against the Commonwealth for the purposes of calculating Appellant's Rule 600 run date. **Accord Kubin**, **supra** at 1027-28; **see also R. Booze**, **supra** at 1293 ("[D]ue diligence was not shown as there was no insurmountable impediments obstructing the Commonwealth from bringing [the defendant] to trial in Pennsylvania.").

Notably, either one of these periods of time is individually long enough in duration to trigger a violation under Rule 600(A)(2)(a). Viewed collectively, we believe the necessary result under Rule 600 is beyond cavil. Based upon

---

[12] This Court's legal rationale in **Commonwealth v. Kubin**, 637 A.2d 1025, 1026-27 (Pa.Super. 1994), was explicitly reaffirmed in **Commonwealth v. R. Booze**, 947 A.2d 1287, 1291-93 (Pa.Super. 2008).

the foregoing discussion, we hold that both of these periods of time should be included in the computation of time under Rule 600 based upon the failure of BCSO to act with due diligence. ***Accord R. Booze***, ***supra*** at 1292-93; ***Kubin***, ***supra*** at 1027. Considering these long periods of unexcused delay, the Commonwealth violated Rule 600. ***See*** Pa.R.Crim.P. 600(C)(1). Thus, we vacate Appellant's judgment of sentence and reverse his conviction for escape.

Judgment of sentence vacated. Conviction reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/20