J-S08035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON LEE KELLER | : | |
| | : | |
| Appellant | : | No. 1275 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 31, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002615-2013

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 14, 2021**

Appellant Brandon Lee Keller appeals the judgment of sentence entered by the Court of Common Pleas of York County on August 31, 2020 pursuant to the revocation of Appellant's parole.  Appellant asserts that he was denied the right to a speedy parole violation hearing.  After careful review, we affirm.

The factual background and procedural history was derived from the joint stipulations of fact filed by both parties for the hearing held on Appellant's motion for dismissal of his parole violations.[1]  On August 2, 2013, Appellant pled guilty to Simple Assault (18 Pa.C.S.A. § 2702) and Harassment (18

---

[*] Former Justice specially assigned to the Superior Court.

[1] "A stipulation of facts is binding and conclusive on a trial court, although the court may nonetheless draw its own legal conclusions from those facts." **Mader v. Duquesne Light Co.**, ___Pa.___, 241 A.3d 600, 615 (Pa. 2020) (citation omitted).

Pa.C.S.A. § 2709). On the same day, the trial court sentenced Appellant to thirty-seven days to twenty-three months' incarceration. The trial court indicated that Appellant would need to receive a parole plan and would be subject to the standard terms and conditions of the probation department. Notes of Testimony (N.T.), 8/2/13, at 8. Appellant was paroled and released from imprisonment on August 13, 2013.

Three months later, on November 14, 2013, a criminal complaint was filed alleging that Appellant wrote a bad check to The Bike Shop in York County, Pennsylvania. Stipulation of Fact ("Stipulation"), 8/31/20, at ¶ 4. A warrant was issued for Appellant's arrest on those charges which were subsequently docketed at CP-67-CR-0000401-2020, as discussed *infra*.

In addition, on November 14, 2013, the York County Adult Probation Department filed a petition for the issuance of an absconder's warrant as Appellant's whereabouts were unknown. The petition alleged that Appellant committed multiple parole violations as he failed to attend a scheduled appointment, did not make contact with his parole officer, moved without permission, failed to report his new address, failed to pay his court costs and fees, and failed to submit to a drug and alcohol evaluation. Petition for Parole Violation, 11/14/13, at ¶ 2. The York County Adult Probation Department attached an absconder warrant form, which stated "extradition is not authorized." Warrant, 11/14/13, at 1. The lower court signed the submitted warrant form that same day.

On November 15, 2013, Appellant was arrested in Boulder, Colorado and charged with disorderly conduct. Stipulation at ¶ 6. Colorado officials made an inquiry to the National Crime Information Center database (NCIC); Appellant allegedly told these officials that he had a warrant for his arrest in Pennsylvania. Stipulation at ¶ 7. N.T., Parole Revocation Hearing, 8/31/20, at 20. Appellant was sentenced to a year of probation in Colorado, during which York County did not lodge a detainer or request that Appellant be extradited back to Pennsylvania. N.T., 8/31/20, at 20-21.

On November 26, 2013, Appellant failed to appear at a pre-trial conference in a third criminal case in York County, in which he had been charged with theft by deception and writing a bad check. Stipulation at ¶ 8. This case had been docketed at CP-67-CR-0006003-2013.

On December 15, 2015, Appellant was arrested in Hillsboro, Oregon. Stipulation at ¶ 10-11. On December 17, 2015, the Oregon Department of Corrections (DOC) inquired as to whether Pennsylvania authorities wished to extradite Appellant. On December 21, 2015, Sergeant Weyth Barley of the York Area Regional Police Department responded to the Oregon DOC by facsimile, stating "[o]ur District Attorney will not authorize extradition from Oregon and we will keep our warrant in the system. Thank you for letting our department know he was in custody." Fax (Exhibit A), at 1.

The prosecution subsequently explained that the York County District Attorney's Office did not extradite Appellant from Colorado or Oregon in accordance with its policy to extradite defendants only from states bordering

Pennsylvania, as well as Virginia, due to the expense of extradition from distant states. Stipulation at ¶ 11-13; N.T., 8/31/20, at 12. The prosecution again claimed that Appellant's absconder warrant was non-extraditable. N.T., 8/31/20, at 32. Appellant admits that he was sentenced to serve 48 months' imprisonment in Oregon and indicated that he served 39 months of this sentence before being released. N.T., 8/31/20, at 24.

On October 3, 2019, Appellant was arrested in Austin, Texas. Stipulation at ¶ 14. Thereafter, Appellant's mother contacted the York County District Attorney requesting that Appellant be extradited to Pennsylvania. Stipulation at ¶ 15. On October 16, 2019, the York County Regional Police Department received approval to extradite Appellant from Texas to Pennsylvania. Stipulation at ¶ 16.

On October 18, 2019, the Travis County Jail in Texas notified the York County District Attorney's Office that extradition would not be permitted until Appellant's pending case in Texas was resolved. Stipulation at ¶ 17. When Appellant's prosecution in Texas had concluded, Appellant waived extradition and was transported to the York County Prison on December 22, 2019. Stipulation at ¶ 19-20; N.T., 8/13/20, at 7.

On December 23, 2019, the lower court revoked Appellant's bail on his two outstanding criminal dockets (CP-67-CR-0006003-2013 and CP-67-CR-0000401-2020), remanded Appellant to the York County Prison, and ordered a parole violation hearing for February 4, 2020. Appellant's parole violation hearing was continued multiple times due to the COVID-19 pandemic.

- 4 -

Appellant's outstanding criminal charges were ultimately dismissed pursuant to Pa.R.Crim.P. 600. Stipulation at ¶ 21; N.T., 8/31/20, at 19.[2]

Appellant filed a motion to dismiss this parole violation pursuant to Pennsylvania Rule of Criminal Procedure 708 as he argued that his violation hearing was not held in a speedy manner. On August 31, 2020, the lower court held a violation of parole (VOP) hearing on the motion where the parties submitted their joint stipulation of the facts.

At the conclusion of the hearing, the trial court denied Appellant's motion to dismiss under Rule 708, finding Appellant was not prejudiced by the delay in his parole revocation hearing. As Appellant did not contest that the prosecution had presented evidence of his violation of parole, the lower court revoked Appellant's parole and sentenced him to the remaining balance of 655 days' imprisonment with 254 days credit for time served, and somewhat surprisingly granted Appellant immediate parole. N.T., 8/31/20, at 38-40.

As the lower court recognized that there was an outstanding detainer for Appellant in Maryland, the lower court directed Appellant to "report in person to the York County Probation Department … within 48 hours of his release from custody in all jurisdictions." N.T., 8/31/20, at 40-41.

Appellant filed a timely appeal and complied with the lower court's direction to file a Concise Statement of Errors Complained of on Appeal

---

[2] Court docket sheets show that the charges in CP-67-CR-0006003-2013 and CP-67-CR-0000401-2020 were dismissed on September 22, 2020.

pursuant to Pa.R.A.P. 1925(b). Appellant raises the following issue for review on appeal:

> Whether the court erred in denying [Appellant's] Motion to Dismiss Parole Violation Pursuant to Pa.R.Crim.P. 708 where [Appellant's] parole violation hearing was delayed nearly seven years after the alleged violations occurred, the Commonwealth failed to act with due diligence in scheduling the hearing "as speedily as possible" despite being aware of [Appellant's] whereabouts for years, and [Appellant] was prejudiced as a result.

Appellant's Brief, at 4.

Appellant's sole claim on appeal challenges the trial court's refusal to dismiss his parole violation pursuant to Pennsylvania Rule of Criminal Procedure 708, which provides in pertinent part:

> (B) Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:
>
> (1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and
>
> (2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B).

In addressing similar challenges under Rule 708, this Court has provided the following guidance:

> [t]he language "speedily as possible" has been interpreted to require a hearing within a reasonable time. Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay.

- 6 -

\* \* \*

In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay.

**Commonwealth v. Woods**, 965 A.2d 1225, 1227 (Pa.Super. 2009) (quoting **Commonwealth v. Clark**, 847 A.2d 122, 123–24 (Pa.Super. 2004)).

\* \* \*

When examining the reasons for the delay, the court looks at the circumstances surrounding the delay to determine whether the Commonwealth acted with due diligence in scheduling the revocation hearing. **Clark, supra** at 124. The court should not fault the Commonwealth for delays resulting from the Department of Corrections' inability to find, transport, or house defendants in their custody. **Id.** at 125. Similarly, a court should not attribute to the Commonwealth delays caused by the defendant. **Commonwealth v. Gaus**, 300 Pa.Super. 372, 446 A.2d 661, 663–64 (1982) (holding only two months of four year and eight month delay attributable to Commonwealth where defendant fled and concealed his whereabouts for four years and six months). Nonetheless, where the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; instead, the court should analyze whether the delay prejudiced the defendant. **Woods, supra**.

To demonstrate a violation of his right to a speedy probation revocation hearing, a defendant must allege and prove the delay in holding the revocation hearing prejudiced him. **Woods, supra** at 1229; **Clark, supra** at 125; **Bischof, supra** at 9. There is no *per se* rule of prejudice for technical violations of the Rules of Criminal Procedure. **Commonwealth v. Marchesano**, 519 Pa. 1, 7–8, 544 A.2d 1333, 1336–37 (1988) (holding defendant cannot establish prejudice merely by alleging court held probation revocation hearing after defendant's period of probation expired). "[T]he controlling consideration at a revocation hearing is whether the facts presented to the court are probative and reliable and not whether traditional rules of procedure have been strictly observed." **Id.** at 6–7, 544 A.2d at 1336.

Prejudice in this context has been interpreted as being something which would detract from the probative value

- 7 -

and reliability of the facts considered, vitiating the reliability of the outcome itself. One specific purpose of our rule in requiring a prompt revocation hearing is to avoid such prejudice by preventing the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination. Another is to prevent unnecessary restraint of personal liberty.

*Id.* at 7, 544 A.2d at 1336. If a defendant is already incarcerated on the charges that triggered the probation revocation, he cannot claim the delay in holding his revocation hearing caused him any loss of personal liberty. *Clark, supra*; *Bischof, supra* at 9. Likewise, where a conviction on new charges conclusively establishes the defendant's probation violation, the defendant cannot claim a delay in his VOP hearing prejudiced him because he lost favorable witnesses and evidence. *Bischof, supra.*

*Commonwealth v. Christmas*, 995 A.2d 1259, 1262–64 (Pa.Super. 2010) (citations omitted).

As noted above, Appellant argues that the nearly seven-year period between his parole violations and his hearing was unreasonable delay that violated the requirement that his VOP hearing be held "as speedily as possible." Pa.R.Crim.P. 708(B)(1). While we note that the seven-year period between Appellant's admitted parole violations and his violation hearing was significant delay, we do not find that dismissal was appropriate simply based on the length of the delay as Rule 708 does not establish a presumptive period in which the Commonwealth must revoke parole. *Christmas*, *supra*.

Appellant claims that the Commonwealth failed to exercise due diligence when it declined to extradite him to Pennsylvania despite having ample opportunity to do so when Appellant was in custody in Colorado and Oregon where there were no legal impediments to his extradition. In response, the

Commonwealth asserts that it had a reasonable extradition policy that restrained the prosecution at that time to limit extradition from states bordering Pennsylvania (and Virginia) due to the expense of extraditing defendants from distant states.[3]  In addition, the Commonwealth notes Appellant was subject to delay attributable to the COVID-19 pandemic, which was beyond the prosecution's control.

In its Rule 1925(a) opinion, the lower court did not analyze the reasons for the delay or whether the Commonwealth exercised due diligence in seeking to make Appellant available for the parole violation hearing, but instead concluded that Appellant failed to show he was prejudiced by the delay in his parole revocation hearing.  We agree.

Appellant admits that he was not prejudiced in the preparation of his defense by the delay in the hearing as he stipulated to his technical parole violations and concedes the delay did not result in a loss of evidence or the unavailability of witnesses.

Further, we are not persuaded by Appellant's assertion that he was prejudiced through unnecessary restraint on his personal liberty.  After Appellant was granted parole in this case, he immediately fled the jurisdiction

_____

[3] We observe that our Court has held the Commonwealth accountable for *unexplained* delay in lodging a detainer or initiating extradition proceedings for speedy trial purposes under Pa.R.Crim.P. 600.  ***Commonwealth v. Morgan***, 239 A.3d 1132, 1140 (Pa.Super. 2020).  Further, this Court found in ***Morgan*** that the Commonwealth did not exercise due diligence in failing to take action on its detainer and extradition request for six years.  ***Id***. at 1141.

and went to Colorado without any regard for his parole obligations in Pennsylvania. During this extended period of time between his parole violations and his hearing, Appellant was arrested multiple times in Colorado, Oregon, and Texas for new charges, was sentenced to a year of probation in Colorado, and served thirty-nine months in an Oregon prison as a result of new convictions. When Appellant eventually returned to Pennsylvania, he was not solely incarcerated due to his parole violation, but he faced criminal charges on two other dockets in York County.[4]

Thus, the restraint on Appellant's liberty was attributable to Appellant's multiple criminal charges and convictions that were unrelated to his pending parole violation hearing. Appellant has not shown prejudice from the delay in his parole revocation hearing as he was not imprisoned longer than he otherwise would have been. **See Clark**, **supra** (finding that the appellant was not prejudiced because of the delay in his probation revocation hearing as he "was not imprisoned longer than he otherwise would have been" when he was serving his sentence on the underlying conviction").

_____

[4] Moreover, we observe that at the time of Appellant's parole revocation hearing, Appellant also faced criminal prosecution for charges he committed in Maryland where a detainer had been issued for his return. Interestingly, when the lower court inquired as to why Maryland had not sought to compel Appellant's appearance prior to his extradition to Pennsylvania, the prosecutor indicated that Maryland authorities were unwilling to extradite Appellant from nonbordering states, but lodged a detainer once Appellant was brought to Pennsylvania. N.T., 8/31/20, at 17-18.

For these reasons, we conclude the trial court did not err in finding that dismissal of Appellant's motion pursuant to Rule 708 was proper as Appellant did not show prejudice from the delay in his parole revocation hearing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/14/2021