J-S26032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE LUIS RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 13 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 3, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003871-2019

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: DECEMBER 3, 2021**

Jose Luis Rodriguez ("Rodriguez") appeals from the judgment of sentence entered following his convictions of two counts of rape by forcible compulsion, and one count each of indecent assault by forcible compulsion and false imprisonment.[1] We vacate Rodriguez's judgment of sentence, and reverse his conviction based on the Commonwealth's failure to exercise due diligence under Pa.R.Crim.P. 600.

On August 8, 2016, Complainant, an adult female, reported to police that she had been raped at gunpoint, by an unknown assailant, in her home in Harrisburg, Dauphin County. Complainant sought treatment at a hospital, where she underwent a sexual assault forensic examination by a certified

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), (2), 3126(a)(2), 2903(a).

sexual assault forensic examiner. The forensic examination yielded DNA evidence, which police eventually matched with Rodriguez.

Based upon the DNA match, the Commonwealth filed a criminal Complaint against Rodriguez on May 23, 2018. On the date that the criminal Complaint was filed, Rodriguez was jailed in Essex County, New Jersey, on unrelated matters. On December 3, 2018, Rodriguez was returned to the custody of the Pennsylvania Department of Corrections. Following a delay discussed *infra*, Rodriguez was served with the arrest warrant on May 29, 2019, while in prison at SCI-Benner Township.

Subsequently, on February 20, 2020, Rodriguez filed a Motion to dismiss pursuant to Rule 600, wherein Rodriguez argued that the Commonwealth had violated his constitutional right to a speedy trial. Following a hearing, the trial court entered an Order denying Rodriguez's Motion. Prior to trial, Rodriguez filed two Motions to allow the admission of evidence of Complainant's prior sexual conduct. The Commonwealth filed a Motion *in limine* to exclude such evidence. Prior to the start of trial, the trial court denied Rodriguez's Motion to admit evidence of prior sexual conduct, and granted the Commonwealth's Motion *in limine*. Following a jury trial, Rodriguez was convicted of, *inter alia*, the above-referenced offenses. On December 3, 2020, the trial court sentenced Rodriguez to an aggregate sentence of ten to twenty years in prison, with credit for time served.

Rodriguez filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Rodriguez presents the following issues for our review:

I.  Did not the [trial] court err in denying [Rodriguez]'s Motion to dismiss pursuant to [Rule] 600?

II.  Did not the [trial] court err in denying [Rodriguez]'s Motion to allow admission of prior instances of sexual contact pursuant to 18 Pa.C.S.[A.] §[ ]3104(b) and in granting the Commonwealth's Motion *in limine* to exclude the same evidence[?]

III.  Did not the [trial] court err in overruling [Rodriguez]'s objection to the introduction of [Complainant]'s statements to the forensic nurse[,] when such statements constituted hearsay that were not admissible under any exception to the hearsay rule?

Brief for Appellant at 6 (uncapitalized).

In his first issue, Rodriguez argues that the trial court erred in denying his Rule 600 Motion, as his trial commenced 574 days after the filing of the Complaint. *Id.* at 16-28.  Rodriguez points to several different time periods which, he claims, are attributable to the Commonwealth. *Id.* at 25-28. Rodriguez asserts that the time period during which he was in prison in New Jersey should count against the Commonwealth. *Id.* at 25-26.  Rodriguez states that the Commonwealth was aware of his location in New Jersey, having interviewed him there, but did not exercise due diligence in seeking his return to Pennsylvania prior to December 2018. *Id.*  Rodriguez further claims that the time period between his return to Pennsylvania and the service of the arrest warrant is not excludable, because the Commonwealth did not exercise due diligence in effectuating service. *Id.* at 26-27.  Finally, Rodriguez claims

that the Commonwealth's requested continuance prior to trial, when it was still completing discovery, serves as further evidence of the Commonwealth's lack of due diligence. *Id.* at 28-29.

"In evaluating Rule 600 issues, our standard of review of the trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*).

> The proper scope of review ... is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

Rule 600 provides, in relevant part, as follows:

**(A) Commencement of Trial; Time for Trial**

* * *

(2) Trial shall commence within the following time periods.

- 4 -

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a). "Rule 600 generally requires the Commonwealth to bring a defendant … to trial within 365 days of the date the complaint was filed." *Hunt*, 858 A.2d at 1240. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. *Id.* at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa. Super. 2004).

It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.* In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

"Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes in[to] account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

- 5 -

*Hunt*, 858 A.2d at 1241 (internal citations and footnote omitted); *see also Commonwealth v. Burno*, 154 A.3d 764, 793-94 (Pa. 2017) (explaining that excusable delay is not calculated against the Commonwealth in a Rule 600 analysis, as long as the Commonwealth acted with due diligence at all relevant times).

In this case, the Complaint against Rodriguez was filed on May 23, 2018, which established a mechanical run date of May 23, 2019. Rodriguez's stipulated trial date was February 10, 2020, which is 264 days past the mechanical run date. Several distinct periods of delay are at issue in this case, which we will address in turn.

First, the trial court analyzed the 195-day span between May 23, 2018, when Detective Ramos filed the Complaint, and December 3, 2018, when Rodriguez was transferred to SCI-Benner Township after completing his sentence in New Jersey, and concluded that it should not count against the Commonwealth, because "[b]y virtue of his out of state incarceration, [Rodriguez] was unavailable." Trial Court Order, 5/20/20, at 1. We disagree.

This Court has determined that the fact that a defendant is in prison in another state does not make a defendant "unavailable" for the purposes of Rule 600. *Commonwealth v. R. Booze*, 947 A.2d 1287, 1291 (Pa. Super. 2008) (quoting *Commonwealth v. Kubin*, 637 A.2d 1025, 1026 (Pa. Super. 1994)). "A defendant is only unavailable if the delay in returning him to Pennsylvania is due to the other state causing the delay; the prosecution,

- 6 -

however, must exercise due diligence in attempting to bring the defendant back for trial." ***Id.***

During the Rule 600 hearing, Detective Ramos testified that she was informed that Rodriguez had been serving a six- to twenty-year sentence at SCI-Benner Township related to a prior conviction in Dauphin County, Pennsylvania. N.T., 3/6/20, at 26. Detective Ramos testified that she was also aware that Rodriguez was in prison in Essex County, New Jersey, on pending charges, while still being in the custody of SCI-Benner Township on the Pennsylvania sentence. ***Id.*** at 12-13. Detective Ramos had previously visited Rodriguez in December 2017, in Essex County, in order to obtain his DNA for testing. ***Id.*** at 26-27. However, Detective Ramos testified that she was not able to immediately return Rodriguez to Pennsylvania after filing the Complaint in May 2018, until he "[took] care of whatever he was taking care of [in New Jersey]." ***Id.*** at 12. Detective Ramos was aware that New Jersey would return Rodriguez to SCI-Benner Township to complete the balance of his Pennsylvania sentence. ***Id.*** at 26-27.

Detective Ramos testified that her standard procedure in these circumstances—*i.e.*, when a defendant is serving a Pennsylvania sentence but had been transferred to another jurisdiction regarding other matters—was to send the warrant to the Pennsylvania prison that the defendant would be returned to upon disposition of the out-of-state matters. ***Id.*** at 13-14. Detective Ramos testified that she forwarded Rodriguez's new warrant to SCI-

Benner Township, so that they could begin processing him on the instant charges as soon as he was returned to Pennsylvania custody from New Jersey. *Id.* She testified that she also communicated the same to Harrisburg Police Corporal Joseph Marshall ("Corporal Marshall"), who coordinates warrants and transportation of defendants in the custody of the Department of Corrections on behalf of the Harrisburg Police. *Id.* at 13. Corporal Marshall testified to the following:

> [Commonwealth:] Would you have been able to get [Rodriguez] from Essex County if he was working with them there?
>
> [Corporal Marshall:] No, I would not have been able to do that because usually after I contact the home prison or wherever the prisoner is at first[,] and they always tell me he'll be back or he's out on writ. I can't touch him because he's taking care of other court matters with a different jurisdiction.
>
> [Commonwealth:] The first time you're able to get [Rodriguez] then would be in December of 2018. Correct?
>
> [Corporal Marshall:] That's correct.

*Id.* at 42. Finally, Rodriguez and the Commonwealth stipulated that while Rodriguez was on writ in Essex County, New Jersey, he was still actively serving a Pennsylvania sentence and was still considered a Pennsylvania inmate by SCI-Benner Township. *Id.* at 46.

Our review of the record and the Rule 600 hearing testimony reveals no attempts by the Commonwealth to extradite Rodriguez to Pennsylvania from New Jersey, nor does it reveal any refusal or indication of unwillingness by New Jersey authorities to do so. In fact, the record suggests that the only communication made by the Commonwealth was the forwarding of

Rodriguez's warrant to officials at SCI-Benner Township, and their request that they contact the Commonwealth upon Rodriguez's return. N.T., 3/6/20, at 13-14, 42. The Commonwealth's efforts in this case failed to satisfy its burden of establishing due diligence. **Compare McNear**, 852 A.2d at 403-04 (concluding that the Commonwealth exercised due diligence when it had sought to extradite the appellant from New Jersey, but New Jersey authorities refused to extradite the appellant and communicated that the appellant would only be available in Pennsylvania when his New Jersey sentences were completed), **with R. Booze**, **supra** at 1292-93 (holding that the time period during which the Commonwealth failed to initiate extradition proceedings counted against them for speedy trial purposes). Accordingly, the 195-day period between the date Detective Ramos filed the Complaint and the date when Rodriguez was transferred to SCI-Benner Township after completing his sentence in New Jersey is not excludable time for the purpose of calculating Rodriguez's Rule 600 run date. **See Commonwealth v. Morgan**, 239 A.3d 1132, 1140 (Pa. Super. 2020) (holding the Commonwealth accountable for unexplained delay in lodging a detainer or initiating extradition proceedings).

Second, the trial court addressed the 178-day span between December 3, 2018, when Rodriguez arrived at SCI-Benner Township, and May 29, 2019, the date that Rodriguez was served with his arrest warrant, and concluded that the 178-day period was not caused by a lack of due diligence by the Commonwealth, as "reasonable, understandable, and non-intentional (or even

lackadaisical) human error does not equate to a lack of due diligence." Order, 5/20/20, at 2. Upon review, we disagree.

> As stated in our case law, and reiterated in the Comment to Rule 600, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Commonwealth v. Selenski***, … 994 A.2d 1083, 1088 ([Pa. ]2010); Pa.R.Crim.P. 600, Comment, ***citing Selenski***. The Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. ***Selenski***, 994 A.2d at 1089.

***Commonwealth v. Plowden***, 157 A.3d 933, 937 (Pa. Super. 2017).

At the Rule 600 hearing, Detective Ramos testified that shortly after she was notified that Rodriguez had been returned to SCI-Benner Township from New Jersey, she directed Corporal Marshall to serve Rodriguez with the warrant. N.T., 3/6/20, at 14. Both Detective Ramos and Corporal Marshall testified that it was standard procedure for Corporal Marshall to serve arrest warrants on the defendants in prison. ***Id.*** at 15-16, 35-38. While Detective Ramos was communicating with Corporal Marshall about serving Rodriguez's warrant, she was simultaneously communicating with him about serving a warrant on a different defendant, in a factually similar but unrelated matter, whose last name was "[R.][2] Rodriguez," and who was housed at SCI-Chester. ***Id.*** at 15. On March 31, 2019, Detective Ramos testified that she had emailed Corporal Marshall asking if the warrant had been served on "my guy for SCI[-

---

[2] We have redacted a portion of the last name of the defendant in the unrelated case, as he and the Complainant share the same name.

- 10 -

]Benner [Township]," whom she referred to as "[R.] Rodriguez," because R. was the last name of both the perpetrator and the Complainant. *Id.* at 16. Detective Ramos testified that she did not use Rodriguez's birthdate or his Department of Corrections identification number in her emails. *Id.* at 31. Corporal Marshall, apparently believing that Detective Ramos was referring to the unrelated defendant, confirmed that he had served the warrant. *Id.* Detective Ramos recognized in her testimony that she "probably should have said Jose Rodriguez," instead of R. Rodriguez, in her communications with Corporal Marshall. *Id.* at 18.

Detective Ramos testified that she was informed by SCI-Benner Township in March 2019—two months before Rodriguez was eventually served with the Complaint—of the potential issue with the two defendants. *Id.* at 21. In all, it took from December 3, 2017, until April 3, 2018, despite multiple attempts by SCI-Benner Township to follow-up on Rodriguez's status, for Detective Ramos and Corporal Marshall to realize their error. *Id.* at 22. Corporal Marshall then sought to locate Rodriguez and, when he was located, Corporal Marshall prepared a writ to serve Rodriguez with the arrest warrant, which was served on May 29, 2019. *Id.* at 40.

The record indicates that while there was no evidence of misconduct or an overt attempt by the Commonwealth to evade Rodriguez's speedy trial rights, the record does not support a finding of due diligence by the Commonwealth in serving Rodriguez his arrest warrant 178 days after the

- 11 -

Complaint was filed. It is undisputed that after December 3, 2018, the Commonwealth was aware of Rodriguez's return to the custody of the Pennsylvania Department of Corrections at SCI-Benner Township, and that he was otherwise available during that time period. We also recognize the unique nature of the confusion between the two, identically-surnamed defendants, where both were accused of committing similar crimes; both were actively serving sentences for other crimes in the custody of the Department of Corrections; and where Detective Ramos had utilized DNA testing to identify both suspects. However, the record suggests that the confusion would have continued were it not for the efforts of an SCI-Benner Township employee.[3] Thus, the record does not support the trial court's finding of due diligence by the Commonwealth in serving the arrest warrant. As the Commonwealth failed to meet its burden of demonstrating that it exercised due diligence, the 178-day period of delay is not excludable, and counts against the

---

[3] Detective Ramos testified that a records specialist at SCI-Benner Township, contacted her in December 2018 about Rodriguez being returned to SCI-Benner Township, and again in March 2019, inquiring about Rodriguez's status. N.T., 3/6/20, at 20-21, 28-29. Detective Ramos testified that she gave the records specialist Corporal Marshall's phone number. *Id.* at 30. Corporal Marshall testified that he discovered that Rodriguez had not been served after he spoke with the records specialist. *Id.* at 40.

Commonwealth. *See Commonwealth v. Plowden*, *supra*.[4]

With those periods of time not excluded, the record reflects that Rodriguez was not brought to trial within 365 days of the filing of the Complaint. Because a violation of Rule 600 occurred as a result of the Commonwealth's failure to exercise due diligence to bring Rodriguez to trial within 365 days of the filing of the Complaint, we conclude that the trial court erred in denying Rodriguez's Rule 600 Motion. Therefore, we are constrained to reverse the denial of Rodriguez's Motion to dismiss, vacate the judgment of sentence, and discharge Rodriguez.[5]

Order reversed. Judgment of sentence vacated. Rodriguez discharged. Superior Court jurisdiction relinquished.

_____

[4] Rodriguez also challenges the trial court's determination that the 22- and 36- day periods, in which the Commonwealth requested continuances because Detective Ramos was traveling outside of the country and was thus unavailable for trial, are also excludable pursuant to Rule 600. Brief for Appellant at 28; *see also* Order, 5/20/20, at 3. Even assuming, arguendo, that the 22- and 36-day periods are excludable, in addition to the uncontested 15-day period wherein Rodriguez requested a continuance due to defense counsel's unavailability, Rodriguez's adjusted run date would be August 4, 2019, 190 days before Rodriguez's trial date of February 10, 2020. We also note that the Commonwealth requested multiple continuances, unrelated to Detective Ramos's unavailability, beginning on October 16, 2019, and as a result could not have been prepared for trial until January 6, 2019, when it requested the second continuance related to Detective Ramos's unavailability. *See Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (holding that time in which neither party is prepared for trial is excludable delay goes against the "letter and spirit of Rule 600.").

[5] Because our reversal of the trial court's denial of Rodriguez's Rule 600 Motion results in his judgment of sentence being vacated, we need not address Rodriguez's remaining issues.

Judge Stabile and Judge Murray concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/03/2021